UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS L. O'GRADY,

                Plaintiff,

      -against-

BLUECREST CAPITAL MANAGEMENT LLP,

           Defendant.

Civil Action No.:  15-cv-01108 (SHS)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT BLUECREST CAPITAL MANAGEMENT LLP'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Anthony P. Alden (*pro hac vice*
application forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100
anthonyalden@quinnemanuel.com

Maya D. Cater
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
mayacater@quinnemanuel.com

*Attorneys for Defendant BlueCrest Capital
Management LLP*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ..................................................................................3

      A.     Mr. O'Grady's Employment At BlueCrest ............................................3

      B.     Mr. O'Grady Was Terminated For Cause On June 5, 2014 ...................6

LEGAL STANDARD..........................................................................................8

ARGUMENT .....................................................................................................9

I.      THE PLAIN TERMS OF MR. O'GRADY'S EMPLOYMENT AGREEMENT UNDERMINE HIS BREACH OF CONTRACT CLAIM ..................................9

      A.     Mr. O'Grady's Employment Agreement Expressly States That Bonuses Are Paid At BlueCrest's Sole And Absolute Discretion ......................10

      B.     Mr. O'Grady's Employment Agreement Expressly States That He Was Not Eligible For A Bonus Once His Employment Was Terminated ...................11

      C.     The Employment Agreement Unambiguously States That Once Mr. O'Grady Was Terminated, He Was Entitled To No More Than The Accrued But Unpaid Portion Of His Base Salary ...................................12

      D.     Mr. O'Grady Is Not Entitled To Severance Pay .....................................13

II.     MR. O'GRADY CANNOT MODIFY HIS WRITTEN EMPLOYMENT AGREEMENT BASED ON ALLEGED ORAL PROMISES ...........................14

III.    MR. O'GRADY'S NON-CONTRACT CLAIMS ARE IMPERMISSIBLY DUPLICATIVE OF HIS CONTRACT CLAIM AND SHOULD BE DISMISSED ........16

      A.     Mr. O'Grady's Claims For Breach Of An Implied Contract, *Quantum Meruit*, Unjust Enrichment, Promissory Estoppel, And An Accounting Are Duplicative Of His Breach Of Contract Claim .......................................16

      B.     Likewise, Mr. O'Grady's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Is Duplicative Of His Breach Of Contract Claim...................................................................................................17

IV.    MR. O'GRADY'S NON-CONTRACT CLAIMS ARE FATALLY DEFICIENT AND SHOULD BE DISMISSED FOR THIS REASON TOO........................18

i

  A. Mr. O'Grady's Claim For Breach Of An Implied Contract Is Fatally Deficient..................................................................................................18

  B. Mr. O'Grady's Claim For Unjust Enrichment Is Similarly Fatally Deficient..................................................................................................20

  C. Mr. O'Grady's Claim For Promissory Estoppel Is Also Fatally Deficient............21

  D. Mr. O'Grady's Claim For An Accounting Is Also Fatally Deficient ...................22

V. NEW YORK LABOR LAW § 193 DOES NOT APPLY TO UNPAID BONUS COMPENSATION ............................................................................................23

VI. MR. O'GRADY IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS ...............25

CONCLUSION........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,*
  50 A.3d 434 (Del. Ch. 2012) ............................................................................ 18

*Ashcroft* v. *Iqbal,*
  556 U.S. 662 (2009).......................................................................................... 8

*Bader v. Wells Fargo Home Mortg.,*
  773 F. Supp. 2d 397 (S.D.N.Y. 2011) .......................................................... 18, 19, 24

*Baraliu v. Vinya Capital, L.P.,*
  No. 07-CV-4626, 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009)............................. 12

*Bear Stearns Inv. Prods., Inc. v. Hitachi Auto. Prods. (USA), Inc.,*
  401 B.R. 598 (S.D.N.Y. 2009)............................................................................ 19

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................... 8, 9

*Bessemer Trust Co., N.A. v. Branin,*
  618 F.3d 76 (2d Cir. 2010) ................................................................................ 10

*Blessing v. Sirius XM Radio Inc.,*
  756 F. Supp. 2d 445 (S.D.N.Y. 2010) ................................................................ 17

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.,*
  949 F. Supp. 2d 486 (S.D.N.Y. 2013) ................................................................ 8

*Broyles v. J.P. Morgan Chase & Co.,*
  No. 08-CV-3391, 2010 WL 815123 (S.D.N.Y. Mar. 8, 2010)............................... 16

*Cordis Corp. v. Boston Scientific Corp.,*
  868 F. Supp. 2d 342 (D. Del. 2012)..................................................................... 13

*Cortec Indus. Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991) ................................................................................ 9

*Creditors Comm. of Essex Builders, Inc. v. Farmers Bank,*
  251 A.2d 546 (Del. 1969) .................................................................................. 19

*Curley v. AMR Corp.,*
  153 F.3d 5 (2d Cir. 1998) .................................................................................. 10

*Dean Witter Reynolds, Inc. v. Ross,*
    429 N.Y.S.2d 653 (1st Dep't 1980) ...................................................... 24

*Defazio v. Wallis,*
    No. 008715-08, 2009 WL 5213678 (N.Y. Sup. Ct. Dec. 7, 2009) ............................................ 23

*DeSantis v. Deutsche Bank Trust Co. Americas, Inc.,*
    501 F. Supp. 2d 593 (S.D.N.Y. 2007) ...................................................... 19

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ...................................................... 17

*Freedman v. Beneficial Corp.,*
    406 F. Supp. 917 (D. Del. 1975)...................................................... 16

*Ginx, Inc. v. Soho Alliance,*
    720 F. Supp. 2d 342 (S.D.N.Y. 2010) ...................................................... 15

*Harris v. Provident Life & Accident Ins. Co.,*
    310 F.3d 73 (2d Cir. 2002) ...................................................... 17

*Hinman v. Red Clay Consol. Sch. Dist.,*
    No. 98C-08-253, 1999 WL 1240852 (Del. Super. Nov. 10, 1999) ............................................ 11

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,*
    936 F.2d 759 (2d Cir. 1991) ...................................................... 15

*ID Biomedical Corp. v. TM Techs., Inc.,*
    No. 13269, 1995 WL 130743 (Del. Ch. Mar. 16, 1995)........................................... 16

*Int'l Paper Co. v. Suwyn,*
    978 F. Supp. 506 (S.D.N.Y. 1997) ...................................................... 16, 24

*J.C. Trading Ltd. v. Wal-Mart Stores, Inc.,*
    947 F. Supp. 2d 449 (D. Del. 2013)...................................................... 21

*Kaplan v. Capital Co. of Am. LLC,*
    747 N.Y.S.2d 504 (1st Dep't 2002) ...................................................... 14

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc,*
    494 F. App'x. 153 (2d Cir. 2012) ...................................................... passim

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.,*
    No. 11-CV-00539, 2011 WL 2936013 (S.D.N.Y. July 4, 2011)...................................... passim

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000) ...................................................... 21

*Koss v. Wackenhut Corp.*,
   704 F. Supp. 2d 362 (S.D.N.Y. 2010) ................................................................. 24

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) ............................................................................. 9

*Levion v. Societe Generale*,
   822 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................................................... 12, 24

*Levy v. Verizon Info. Serv., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007) .................................................................. 25

*Lonergan v. EPE Holdings, LLC*,
   5 A.3d 1008 (Del. Ch. 2010) ............................................................................... 17

*MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen–Boerenleenbank B.A.*,
   No. 09-CV-10093, 2011 WL 1197634 (S.D.N.Y. Mar. 25, 2011) .......................... 13

*Monagle v. Scholastic, Inc.*,
   No. 06-CV-14342, 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007).............................. 25

*Namad v. Salomon Inc.*,
   74 N.Y.2d 751 (1989) .......................................................................................... 10

*Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*,
   No. 02-CV-7666, 2005 WL 1123735 (S.D.N.Y. May 11, 2005) ............................ 10

*Patel v. Baluch's Indian Rest.*,
   No. 08-CV-9985, 2009 WL 2358620 (S.D.N.Y. July 30, 2009)............................. 12

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*,
   No. 07-CV-10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009)............................ 17

*Raul v. Rynd*,
   929 F. Supp. 2d 333 (D. Del. 2013)...................................................................... 20

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*,
   616 A.2d 1192 (Del. 1992) .................................................................................. 12

*Rossdeutscher v. Viacom, Inc.*,
   768 A.2d 8 (Del. 2001), as revised (Apr. 2, 2001) ............................................... 16

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ................................................................................... 9

*Schock v. Nash*,
   732 A.2d 217 (Del. 1999) ..................................................................................... 20

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*
   959 F.2d 425 (2d Cir. 1992) ........................................................................ 13

*Smith v. Railworks Corp.*,
   No. 10-CV-3980, 2011 WL 2016293 (S.D.N.Y. May 17, 2011) ............................ 10

*Soley v. Wasserman*,
   823 F. Supp. 2d 221 (S.D.N.Y. 2011) ............................................................ 19

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
   842 F. Supp. 2d 502 (S.D.N.Y. 2012) ............................................................ 23

*Spitzer v. Schussel*,
   792 N.Y.S.2d 798 (N.Y. Sup. Ct. 2005) ........................................................ 23

*Sussman v. Rabobank Int'l*,
   739 F. Supp. 2d 624 (S.D.N.Y. 2010) ............................................................ 13

*Textiles Network Ltd. v. DMC Enters., LLC*,
   No. 07-CV-0393, 2007 WL 2460767 (S.D.N.Y. Aug. 31, 2007)............................ 21

*Tierney v. Capricorn Investors, L.P.*,
   189 A.D.2d 629 (N.Y. App. Div. 1993) .......................................................... 23

*Trincia v. Testardi*,
   57 A.2d 638 (Del. Ch. 1948) ........................................................................ 19

*Truelove v. Northeast Capital & Advisory, Inc.*,
   715 N.Y.S.2d 366 (2000)............................................................................. 24

*Two Locks, Inc. v. Kellogg Sales Co.*,
   No. 14-CV-5917, 2014 WL 7335465 (E.D.N.Y. Dec. 19, 2014)............................ 10

*VonFeldt v. Stifel Fin. Corp.*,
   714 A.2d 79 (Del. 1998) ............................................................................. 21

*Welland v. Citigroup*,
   No. 00-CV-0738, 2003 WL 22973574 (S.D.N.Y. 2003)....................................... 10

*Wolff v. Rare Medium, Inc.*,
   171 F. Supp. 2d 354 (S.D.N.Y. 2001) ............................................................ 17

*Xu v. J.P. Morgan Chase & Co.*,
   No. 01-CV-8686, 2003 WL 25964617 (S.D.N.Y. Sept. 24, 2003) ......................... 24

**Statutes**

Fed. R. Civ. P. 12(b)(6)...................................................................................... 1

Fed. R. Civ. P. 9(c) ................................................................................................... 1, 12

New York Labor Law § 193 .................................................................................. 2, 23, 24, 25

**Other Authorities**

Securities Exchange Act Release No. 67774 (Sept. 4, 2012),
    77 FR 55519 (Sept. 10, 2012) .................................................................................. 7

Defendant BlueCrest Capital Management LLP respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint filed by Plaintiff Nicholas L. O'Grady, pursuant to Rules 9(c) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Mr. O'Grady was employed as a Portfolio Manager at an affiliate of Defendant BlueCrest Capital Management LLP from December 2, 2013, until he was terminated for cause on June 5, 2014.[1] Mr. O'Grady's seven-month stint at BlueCrest was governed by his written employment agreement (the "Employment Agreement"). The Employment Agreement stated that Mr. O'Grady was entitled to a base salary of $250,000 per year ("Base Salary"), and that he would be eligible to participate in any bonus programs that BlueCrest may—"in its sole and absolute discretion"—decide to award. The Employment Agreement also expressly stated that if Mr. O'Grady was terminated: (1) he would not be eligible for a bonus; and (2) he would receive only the accrued but unpaid portion of his Base Salary as of his termination date. Notwithstanding these unambiguous written terms, which are spelled out in black and white in the contract attached to his Complaint, Mr. O'Grady now claims he is entitled to so-called "Accrued Obligations" consisting of $1,284,652 in bonus payments and another $20,833 in "severance."

Mr. O'Grady seeks payment based on seven separate legal theories, including: breach of contract (Count I); breach of implied contract (Count II); unjust enrichment (Count III); promissory estoppel (Count IV); breach of the implied covenant of good faith and fair dealing

---

[1]   The Complaint names BlueCrest Capital Management LLP as the Defendant in this action. However, Mr. O'Grady was not employed by BlueCrest Capital Management LLP. Rather, as clearly stated in the Employment Agreement attached to his Complaint, Mr. O'Grady was employed by BlueCrest USA GP, LLC (now known as BC USA GP, LLC), as general partner to BlueCrest Capital Management (New York) LP. As used herein, the term "BlueCrest" means either (a) the named Defendant, BlueCrest Capital Management LLP, or (b) Mr. O'Grady's actual former employer, BlueCrest USA GP, LLC, as the context requires.

(Count V); violation of New York's Labor Law § 193 (Count VI); and an accounting (Count VII). Notably, in 2011, Mr. O'Grady's counsel brought almost identical claims in this district on behalf of a former employee of another organization. *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.,* No. 11-CV-00539, 2011 WL 2936013 (S.D.N.Y. July 4, 2011). Judge McMahon's decision to dismiss the complaint in its entirety was unanimously affirmed by the Second Circuit. *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc,* 494 F. App'x. 153, 158 (2d Cir. 2012). Yet remarkably, the same counsel now brings the virtually same claims based on virtually the same factual matrix and somehow expects a different a result. For the same reasons articulated by Judge McMahon and the Second Circuit in *Karmilowicz,* and as discussed below, Mr. O'Grady's Complaint fails to state any plausible right to relief and should be dismissed.

*First,* under Section 3 of Mr. O'Grady's Employment Agreement, "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] sole and absolute discretion." It is black-letter law that an employee cannot recover for an employer's decision not to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus.

*Second,* Mr. O'Grady's Employment Agreement expressly states that he "will not be eligible to be paid any bonus *if at any time prior to the date of any payment … [his] employment has been terminated.*" (Emphasis added). By its terms, Mr. O'Grady was eligible to receive a bonus only if he was employed by BlueCrest *at the time of payment.* To the extent BlueCrest awards a bonus to an employee, it does so based in part on annual revenue, which by definition cannot be determined or paid until after the year ends. As Mr. O'Grady concedes in his Complaint, his employment ended no later than June 5, 2014. Thus, he does not allege—because he cannot—that he was employed at the time of "payment."

*Third*, Section 5.4 of the Employment Agreement expressly states that, regardless of the circumstances of his termination, Mr. O'Grady was entitled to receive no more than the accrued but unpaid portion of his Base Salary as of his termination date (all of which has been paid), as well as accrued employee benefits, such as health and life insurance (all of which were provided).

*Fourth*, despite his allegations to the contrary, Mr. O'Grady was terminated *for cause*. Nothing in his Employment Agreement entitles Mr. O'Grady to severance pay (and certainly not a bonus) when he was terminated for cause.  Even assuming for purposes of this Motion that Mr. O'Grady was terminated without cause as he claims, the Employment Agreement requires Mr. O'Grady to have signed a release as a condition to any "severance" payment.  Mr. O'Grady does not allege—because he cannot—that such a release was signed.

*Fifth*, Mr. O'Grady cannot end-run the express terms of the Employment Agreement based on quasi-contractual, equitable, or statutory theories of liability.  Consistent with the Court's findings in *Karmilowicz,* not only do each of these theories suffer from general pleading deficiencies, Mr. O'Grady's quasi-contract and tort claims are based on the same purported "facts" as the breach of contract claim and thus impermissibly duplicative.

In sum, Mr. O'Grady does not and cannot allege a single claim that would obligate BlueCrest to pay him the "Accrued Obligations" he seeks.  Accordingly, the Complaint must be dismissed with prejudice.

## STATEMENT OF FACTS

### A.     Mr. O'Grady's Employment At BlueCrest

Mr. O'Grady was employed by BlueCrest as a Portfolio Manager in the U.S. Equities division from December 2, 2013, until he was terminated on June 5, 2014.  Compl. ¶¶ 43, 53.

The terms of Mr. O'Grady's employment, including his compensation, were set forth in full in the Employment Agreement, which Mr. O'Grady signed.  Compl. Exhibit A; *see also* Ex. 1.[2] Under Section 2 of the Employment Agreement, Mr. O'Grady was entitled to Base Salary of $250,000 per year, which was payable pro rata on a semi-monthly basis.  *Id*. at § 2.  Mr. O'Grady was also "eligible to participate in any bonus programs [BlueCrest] may decide to establish from time to time," subject to the provisions of the applicable bonus program.  *Id*. at § 3.  The Employment Agreement states that "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] *sole and absolute discretion*." *Id*.  (emphasis added).

Mr. O'Grady was provided with bonus guidelines titled "Equities Compensation Model – Illustrative Guidelines" (the "Bonus Guidelines").  Ex. 2 (*see also* Compl. Exhibit B).  Under the Bonus Guidelines, Mr. O'Grady and his team of analysts were eligible to be considered for a bonus—subject to BlueCrest's sole and absolute discretion—taking into consideration the net annual profits Mr. O'Grady's team generated (if any) during the previous calendar year.  *Id*.  If BlueCrest decided to pay employee bonuses (either to a specific individual or more generally), they were typically paid in part to similarly-situated employees during the first quarter of the year following the performance year to which they related, with the remainder subject to future deferral and vesting conditions.

The Bonus Guidelines, which were provided to Mr. O'Grady specifically by way of illustration only, stated that:

---

[2]   These facts are taken from the few relevant allegations in the Complaint (cited herein as "Compl.") and documents incorporated therein and integral thereto, which are attached to the accompanying Declaration of Maya D. Cater, dated April 8, 2015 ("Cater Declaration").  "Ex. __" refers to the Exhibits attached to the Cater Declaration.

No reliance should be placed on any information or representation contained within this document ... no liability of any type will be incurred with regard to such information or representation by ... any member of the BlueCrest group of entities ... The rights of all employees ... will remain at all times strictly subject to review and approval in accordance with the terms of the applicable employment agreement ... which has neither been varied nor modified by anything set out herein.

Ex. 2.

To be eligible for a bonus, the Employment Agreement requires Mr. O'Grady to be employed by BlueCrest at the time such bonus is paid. Ex. 1, at § 3. Specifically, Section 3 states that "[Mr. O'Grady] will *not be eligible to be paid any bonus if at any time prior to the date of any payment … [his] employment has been terminated*." *Id.* (emphasis added). Mr. O'Grady's employment could be terminated—and thus his eligibility to be considered for a bonus forfeited—in one of three ways, which are set forth in Section 5 of the Employment Agreement:

- 5.1 <u>Voluntary Termination</u>. Mr. O'Grady could voluntarily terminate his employment at any time upon three months' prior written notice to BlueCrest.

- 5.2 <u>Termination for Cause</u>. BlueCrest could terminate Mr. O'Grady for "cause." The Employment Agreement defined "cause" to include, among other things, Mr. O'Grady's "failure to comply with any policy or guidelines or procedures of BlueCrest, as identified from time to time." *Id.* at § 5.2. Whether Mr. O'Grady was to be terminated for "cause" was to be "determined by [BlueCrest]." *Id.*

- 5.3 <u>Termination Without Cause</u>. BlueCrest could terminate Mr. O'Grady's employment without cause upon one month's prior written notice.

Pursuant to Section 5.4 of the Employment Agreement, if Mr. O'Grady's employment terminated pursuant to Sections 5.1 (voluntary termination) or 5.3 (termination without cause), described above, Mr. O'Grady was "entitled to receive [his] Base Salary and any employee benefits … accrued, but unpaid, through [his] termination date." Ex. 1 at § 5.4. The Employment Agreement further states that, "[i]n the event of such termination, and in lieu of any

notice required, [BlueCrest] may, in its absolute discretion, terminate [Mr. O'Grady's] employment immediately (or at any time during the notice period) and make a lump sum payment equivalent to [his] Base Salary through the end of the notice period … *provided that [he] execute a valid and irrevocable release agreement* in a form acceptable to [BlueCrest]." *Id.* (emphasis added).

Mr. O'Grady agreed that the terms of the Employment Agreement set forth the "entire understanding between [Mr. O'Grady and BlueCrest] with respect to the subject of [Mr. O'Grady's] employment and supersedes all prior or contemporaneous understandings, agreements and negotiations on that subject." *Id.* at § 21.  Mr. O'Grady further agreed that BlueCrest "has made no representations … regarding the kind, character or existence of work or the compensation that [Mr. O'Grady] will receive for such work other than as set forth in this Agreement," and that the Agreement "may be amended or modified only by a written instrument signed by both Parties." *Id.* at §§ 21, 22.

**B.      Mr. O'Grady Was Terminated For Cause On June 5, 2014**

As a condition to his employment, Mr. O'Grady agreed to "abide by [BlueCrest's] personnel policies and practices (as may be amended in [BlueCrest's] sole discretion)," which included BlueCrest's Code of Ethics.  *Id.* at § 8.  Among other things, the Code of Ethics requires employees to "act with integrity, competence, diligence and respect, and in an ethical manner with the public, clients and their investors, prospective clients and investors, employers, employees, colleagues in the investment profession, and other participants in the global capital markets."  Ex. 3, pp. 1-2.  As stated in the Code of Ethics themselves, BlueCrest "***has zero tolerance for violations of its Code of Ethics and therefore may subject offenders to reprimand, suspension or termination of employment.***"  *Id.* (emphasis in original).

Consistent with the Code of Ethics, BlueCrest also has a "chat-room" policy.  Among other things, the policy stated that chat-rooms should be used only for receiving research from banks or requesting "market color" or pricing from a market counterparty.  The policy also required all chat rooms to have business appropriate names, and that no proprietary information or position information may be shared with other hedge funds.

To monitor compliance with its policies, BlueCrest conducts audits of its employees' external communications from time to time, including its employees' "chat-room" activity.  In the course of one such audit, BlueCrest discovered several conversations of material concern that took place between Mr. O'Grady and his former colleague, David J. Blanc, from SAC Capital Advisors (now known as Point72 Asset Management).  According to the transcripts of these conversations, Mr. O'Grady repeatedly disclosed certain proprietary stock positions and profit and loss information, and in one instance directly referred to his abuse of BlueCrest's risk policies, stating that he was "in violation of like every risk parameter known to man."[3]  The audit also revealed an extremely disturbing exchange that took place on March 31, 2014, in which Mr. O'Grady appeared to invite Mr. Blanc to "front run" him on a trade.[4]

On June 5, 2014, BlueCrest's Head of Compliance, Ms. Margot Marshall, along with BlueCrest's Head of Human Resources, Ms. Donna Winston, and BlueCrest's U.S. Compliance

---

[3]   BlueCrest also discovered that Mr. O'Grady actively participated in at least two inappropriately-named chat rooms called "Smell my Finger" and "Hole Cut in the Sheet."

[4]   "Front running" is the practice of a trader purchasing a security for an account owned or managed by him or her based on advance knowledge of a pending order in the same security. By using this advance knowledge to trade in front of the other order, the trader may benefit from a better price on his or her trade.  This trade, however, may move the price of the security, to the potential disadvantage of the other order and other market participants trading in the security. "Front running" is forbidden by BlueCrest's company policies.  *See also* Securities Exchange Act Release No. 67774 (Sept. 4, 2012), 77 FR 55519 (Sept. 10, 2012).

Manager, Renny Cabreros, met with Mr. O'Grady to discuss his communications with Mr. Blanc.[5]  Later that day, following internal discussions regarding Mr. O'Grady's conduct, it was determined that Mr. O'Grady would be terminated.  He was asked to turn in his badge and escorted from the premises.

On June 6, 2015, BlueCrest sent Mr. O'Grady a formal letter terminating the Employment Agreement (the "Termination Letter").  *See* Ex. 4.  The Termination Letter stated, "[p]ursuant to Section 5.2 of the [Employment Agreement] your employment was terminated for Cause effective June 5, 2014."  *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when it does not contain sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  To have the requisite "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "Though the court must accept the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 497 (S.D.N.Y. 2013) (quoting *Iqbal,* 556 U.S. at 678).  Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*  Unless a plaintiff's well-pleaded allegations have "nudged

---

[5]    Ms. Marshall attended via London voice conference.

[its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

In deciding a Rule 12(b)(6) motion, the Court may consider the full text of documents that are quoted in or attached to the Complaint, or "that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the suit." *Karmilowicz*, 494 F. App'x. at 156, citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) and *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion [to dismiss].").  Although the Court must take allegations in the Complaint as true, where, as here, the documents incorporated thereto contradict the Plaintiff's claims, the documents' "clear language—not the complaint's allegations—prevails." *Karmilowicz,* 494 F. App'x. at 156.

## ARGUMENT

## I.   THE PLAIN TERMS OF MR. O'GRADY'S EMPLOYMENT AGREEMENT UNDERMINE HIS BREACH OF CONTRACT CLAIM

To state a claim for breach of contract under New York law, "a plaintiff must allege facts that prove: (1) the making of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract, and (4) damages suffered by the plaintiff." *Karmilowicz*, 2011 WL 2936013, at \*6; *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009) (breach of contract claim requires plaintiff to show the existence of a contract, the breach of an obligation imposed by that contract, and the resultant damage to the plaintiff).[6]

---

[6]   The Employment Agreement states that it is governed by Delaware law.  Ex. 1, at § 17. However, where, as here, "there is no actual conflict between the potentially applicable bodies of law, the court should dispense with the choice of law analysis and apply the law of the forum,

While the Complaint states numerous times that Mr. O'Grady is supposedly "entitled" to a bonus and severance pay, it fails to identify a single provision in the Employment Agreement that supports this assertion. *See, e.g.,* Compl. ¶¶ 4, 5, 7, 32, 34, 35, 37, 38, 39, 41, 42, 46, 47, 54, 59, 65, 66, 69, 70, 81, 82, 100. Indeed, no such provision exists. On the contrary, the Employment Agreement expressly states that Mr. O'Grady is *not* entitled to the payments he seeks. Accordingly, because Mr. O'Grady fails to plausibly allege that BlueCrest had any obligation to pay him the "Accrued Obligations," his breach of contract claim must be dismissed.

### A. Mr. O'Grady's Employment Agreement Expressly States That Bonuses Are Paid At BlueCrest's Sole And Absolute Discretion

Mr. O'Grady's Employment Agreement states that "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] *sole and absolute discretion*." Ex. 1, at § 3 (emphasis added). New York courts, including this Court and the Second Circuit, have repeatedly held that "an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus." *Karmilowicz,* 2011 WL 2936013, at *7, quoting *Smith v. Railworks Corp.*, No. 10-CV-3980, 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011) (referencing *Namad v. Salomon Inc.,* 74 N.Y.2d 751, 752–753 (1989); *Bessemer Trust Co., N.A. v. Branin,* 618 F.3d 76, 92 (2d Cir. 2010); and *Welland v. Citigroup*, No. 00-CV-0738, 2003 WL 22973574, at *15 (S.D.N.Y. 2003) (holding contract language stating incentive payments "determined at

---

even when a dispute is governed by a contract containing a choice of law provision." *Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.,* No. 02-CV-7666, 2005 WL 1123735, at *1 (S.D.N.Y. May 11, 2005) (citations omitted); *see also Two Locks, Inc. v. Kellogg Sales Co.*, No. 14-CV-5917, 2014 WL 7335465, at *7-8 (E.D.N.Y. Dec. 19, 2014) (applying New York law despite the Delaware choice of law provision in the contract because there was no difference between New York and Delaware law) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (choice of law analysis unnecessary when there is no actual conflict of law)).

management's sole and exclusive discretion" unambiguously vested complete control of incentive payments in the employer)); *see also Hinman v. Red Clay Consol. Sch. Dist.*, No. 98C-08-253, 1999 WL 1240852, at \*3 (Del. Super. Nov. 10, 1999) (nothing in the contract guaranteed the plaintiff a bonus for an exemplary rating).

Mr. O'Grady alleges that the Bonus Guidelines were "specifically referred to in the Employment Agreement." Compl. ¶ 38. Not so. The Employment Agreement does not refer to any particular bonus program, much less the Bonus Guidelines (which at any rate is not a bonus "program"). *See* Ex. 1, at § 3 ("You will be eligible to participate in any bonus programs the Company may decide to establish from time to time to cover employees similarly situated to you, subject to the provisions of the applicable bonus program."). And in any event, even if the Bonus Guidelines had been "referred to" in the Employment Agreement as Mr. O'Grady suggests, any decision to pay Mr. O'Grady pursuant thereto would have been "subject to [BlueCrest's] sole and absolute discretion." *Id*. In one way or another, the plain language of the Employment Agreement bars Mr. O'Grady's breach of contract claim. *See Karmilowicz,* 2011 WL 2936013, at \*7 (stating that the contracts' language gave the employer absolute discretion to determine whether its employees may receive incentive awards, and that "[i]n one way or another, every one of [the defendant's] plans contains language that bars Plaintiff's breach of contract claim").

### B. Mr. O'Grady's Employment Agreement Expressly States That He Was Not Eligible For A Bonus Once His Employment Was Terminated

The Employment Agreement states that Mr. O'Grady "*will not be eligible to be paid any bonus if at any time prior to the date of any payment … [his] employment has been terminated*." Ex. 1, at § 3 (emphasis added). Thus, Mr. O'Grady's right to receive a bonus is expressly conditioned on active employment on the date of *payment*. But, as Mr. O'Grady concedes, he

was terminated before any bonus was paid.  *See, e.g.*, Compl. ¶ 53.  Thus, Mr. O'Grady fails to

allege that he is entitled to the bonus he seeks, and his breach of contract claim must be

dismissed.  *See* Fed. R. Civ. P. 9(c) (requiring a plaintiff to allege that "all conditions precedent

have occurred or been performed"); *Karmilowicz*, 494 F. App'x. at 157 (affirming dismissal

where the compensation plan "conditioned the receipt of any payment by mandating that only

active employees . . . [with] continued employment through the payout date' are eligible to

receive incentive awards"); *Patel v. Baluch's Indian Rest.,* No. 08-CV-9985, 2009 WL 2358620,

at *8 (S.D.N.Y. July 30, 2009) (dismissing employee's breach of contract claim for failure to

allege satisfaction of condition precedent); *Baraliu v. Vinya Capital, L.P.,* No. 07-CV-4626,

2009 WL 959578, at *5-6 (S.D.N.Y. Mar. 31, 2009) (dismissing breach of contract claim where

conditions precedent, including continued employment, were unpled and unsatisfied); *see also*

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1198 (Del. 1992)

(where a condition precedent is "subject to only one reasonable interpretation," a plaintiff "must

show that he has complied with all conditions precedent to . . . performance").

### C.     The Employment Agreement Unambiguously States That Once Mr. O'Grady Was Terminated, He Was Entitled To No More Than The Accrued But Unpaid Portion Of His Base Salary

Mr. O'Grady's breach of contract claim is also belied by Section 5.4 of the Employment

Agreement.  Section 5.4 states that upon termination, Mr. O'Grady "was entitled to receive [his]

*Base Salary* . . . accrued, but unpaid, through [his] termination date."  Ex. 1, at § 5.4 (emphasis

added).  Mr. O'Grady's "Base Salary" is expressly defined as $250,000 per year.  *Id*. at § 2.

Indeed, to allow Mr. O'Grady's claims to proceed would require the Court to effectively rewrite

Section 5.4 of the Employment Agreement, which is "something courts are not free to do."

*Levion v. Societe Generale*, 822 F. Supp. 2d 390, 398 (S.D.N.Y. 2011), citing *MBIA Ins. Corp. v.*

*Cooperatieve Centrale Raiffeisen–Boerenleenbank B.A.,* No. 09-CV-10093, 2011 WL 1197634, at \*11 (S.D.N.Y. Mar. 25, 2011) (noting that "[courts] may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."); *see also Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) (Stein, J.) ("In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use."), citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.* 959 F.2d 425, 428 (2d Cir. 1992); *Cordis Corp. v. Boston Scientific Corp.*, 868 F. Supp. 2d 342, 351 (D. Del. 2012), *aff'd in part, vacated in part on other grounds*, 504 F. App'x 922 (Fed. Cir. 2013) ("The primary consideration in interpreting a contract is to attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted.").

### D. Mr. O'Grady Is Not Entitled To Severance Pay

The Complaint also fails to plausibly allege that Mr. O'Grady is entitled to a "severance" payment. Contrary to Mr. O'Grady's representations to this Court, Mr. O'Grady was terminated *for cause* pursuant to Section 5.2 of the Employment Agreement, which was confirmed by the Termination Letter which Mr. O'Grady received on June 6, 2014. *See* Ex. 4. But even assuming for purposes of this Motion that Mr. O'Grady was fired without cause as he claims, Section 5.4 of the Employment Agreement requires Mr. O'Grady to sign a release as a condition to payment. Ex. 1, at § 5.4. Mr. O'Grady does not allege that such release was signed (nor can he, as he was fired for cause, and this option was not available to him). *See Karmilowicz,* 2011 WL 2936013, at \*9 (noting the plaintiff's claim for severance was barred by the terms of the contract at issue "since he was fired for cause and he did not sign a Separation and Release Agreement, which is a precondition to payment").

II.    **MR. O'GRADY CANNOT MODIFY HIS WRITTEN EMPLOYMENT AGREEMENT BASED ON ALLEGED ORAL PROMISES**

Mr. O'Grady's conclusory allegations that he was "promised" or "guaranteed" a bonus do not save his breach of contract claim (or any other claim). It is well settled that oral promises do not modify the terms of a written contract, where, as here, the contract provides that it may only be amended by writing. *See* Ex. 1, at § 22 ("This Agreement may be amended or modified only by a written instrument signed by both Parties."); *see also Karmilowicz,* 2011 WL 2936013, at *6 (rejecting the plaintiff's allegation that an oral promise supports his breach of contract claim as "absurd," noting that "[o]ral promises by company officers to award incentive payments cannot override a written agreement making such compensation payable solely in the company's discretion"), citing *Kaplan v. Capital Co. of Am. LLC*, 747 N.Y.S.2d 504, 506 (1st Dep't 2002).

Moreover, Mr. O'Grady's allegations that his bonus was a "guarantee" are gross mischaracterizations of the truth. For example, Mr. O'Grady alleges that he "received his payout "GUARANTEE" by email based on his profits, consistent with the agreed 18% rate as set forth on the [Bonus Guidelines]." Compl. ¶ 46 (emphasis in original). To support this allegation, Mr. O'Grady attaches a photocopied email from Mr. Dafydd Jones (an employee in the finance department of BlueCrest's U.K.-based affiliate) to Mr. O'Grady. *See* Compl. ¶ 47. The email states: "Please find attached your latest comp file. I have also attached a file containing your team's salary and guarantees." *Id*. Although Mr. O'Grady includes a copy of *one* of the documents attached to the email (*i.e.,* Mr. O'Grady's "comp file," which does not even mention guarantees), he conveniently failed to include the attachment that *actually* refers to "guarantees."

Tellingly, along with Mr. O'Grady's "comp file," Mr. Jones' email attached a spreadsheet setting forth, among other things: (1) any "guarantees" paid or to be paid to Mr.

O'Grady and his team (there are none) (*see* Columns Q-R);[7] and (2) the amount of Mr. O'Grady's potential bonus for 2013 (Column S).  A true and correct copy of the email with *both* attachments is attached to the Cater Declaration as Exhibit 5.  Contrary to Mr. O'Grady's representations to the Court, the "guarantee" columns are blank.   *Id*. at Columns Q-R. Importantly, in response to Mr. Jones' request,[8] Mr. O'Grady allocated the proposed bonus in Column S to himself and his team, and left the "guarantee" columns blank (because none were applicable). *See* Ex. 6.

The Second Circuit has "cautioned that a plaintiff cannot 'evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference.'" *Karmilowicz,* 494 F. App'x. at 156 (alterations in original) (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991)); *see also Ginx, Inc. v. Soho Alliance,* 720 F. Supp. 2d 342, 346 (S.D.N.Y. 2010) (not accepting as true allegation characterizing content of document that was contradicted by the document itself).

Indeed, Mr. O'Grady's failure to include an attachment to an email that he expressly relied upon in his Complaint—and which flatly contradicts his assertion that he was "guaranteed" a bonus—speaks volumes about the veracity of his allegations and the merits of his claims.

---

[7]   BlueCrest offers a one-time "guarantee" payment to certain new hires to induce them to join BlueCrest.   Mr. O'Grady, however, was not offered any such guarantee, and the Complaint alleges nothing to the contrary.

[8]   Mr. Jones asked Mr. O'Grady to "populate this file with any proposed discretionary awards for your team and return to me on Monday."  Compl. ¶ 47.

### III.   MR. O'GRADY'S NON-CONTRACT CLAIMS ARE IMPERMISSIBLY DUPLICATIVE OF HIS CONTRACT CLAIM AND SHOULD BE DISMISSED

In addition to his breach of contract claim, Mr. O'Grady seeks relief under an array of quasi-contractual theories of recovery, including breach of implied contract (Count II); unjust enrichment (Count III); promissory estoppel (Count IV); breach of the implied covenant of good faith and fair dealing (Count VI); and an accounting (Count VII).  Each of these claims fail because they are impermissibly duplicative of the breach of contract claim.

#### A.   Mr. O'Grady's Claims For Breach Of An Implied Contract, *Quantum Meruit*, Unjust Enrichment, Promissory Estoppel, And An Accounting Are Duplicative Of His Breach Of Contract Claim

As this Court and the Second Circuit have repeatedly held, "quasi-contract theories of recovery—namely, [] claims for breach of an implied contract, *quantum meruit*, unjust enrichment, and promissory estoppel" are "unavailable where [as here] an express contract covers the subject matter."  *Karmilowicz,* 494 F. App'x. at 157 (citing New York cases); *see also Broyles v. J.P. Morgan Chase & Co.,* No. 08-CV-3391, 2010 WL 815123, at *4 (S.D.N.Y. Mar. 8, 2010) (valid written contract "disposes" of "quasi-contract claims of quantum meruit, unjust enrichment, implied-in-fact contract, and promissory estoppel"); *Int'l Paper Co. v. Suwyn,* 978 F. Supp. 506, 513-14 (S.D.N.Y. 1997) (dismissing *quantum meruit* claim where employer's written compensation plan required current employment to be eligible for incentive compensation award); *ID Biomedical Corp. v. TM Techs., Inc.*, No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) ("A party cannot seek recovery under an unjust enrichment theory if a contract 'is the measure of [the] plaintiff's right."), citing *Freedman v. Beneficial Corp.,* 406 F. Supp. 917, 923 (D. Del. 1975); *Rossdeutscher v. Viacom, Inc.*, 768 A.2d 8, 23-24 (Del. 2001), as revised (Apr. 2, 2001) ("Courts generally dismiss claims for quantum meruit on the pleadings . . . when it is clear from the face of the complaint that there exists an express contract that clearly

16

controls."). Because Mr. O'Grady's relationship with BlueCrest was governed by a written contract, his claims for breach of an implied contract, *quantum meruit*, unjust enrichment, and promissory estoppel should be dismissed.

Likewise, it is well-settled that an "equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011), citing *Physicians Mut. Ins. Co. v. Greystone Servicing Corp*., No. 07-CV-10490, 2009 WL 855648, at *11 (S.D.N.Y. Mar. 25, 2009) ("Although the accounting and equitable relief plaintiffs seek under this cause of action is different from the monetary damages . . . this cause of action still arises from the same operative facts as plaintiffs' contract breach claim."). Mr. O'Grady fails to allege any facts independent of his breach of contract claim to justify an accounting.

### B.    Likewise, Mr. O'Grady's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Is Duplicative Of His Breach Of Contract Claim

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim [is pled on the same facts]." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 460 (S.D.N.Y. 2010) (dismissing good faith and fair dealing claim based on same alleged conduct as that underlying deficient contract claim); *Wolff v. Rare Medium, Inc.,* 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001) (dismissing good faith and fair dealing claim as duplicative of claim for breach of contract); *see also Lonergan v. EPE Holdings, LLC,* 5 A.3d 1008, 1018-19 (Del. Ch. 2010) (dismissing covenant of good faith and fair dealing cause of action concerning related party transactions because contract expressly addressed the same issues); *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing*

*Member, LLC,* 50 A.3d 434, 441 (Del. Ch. 2012) (noting that "[e]xpress contractual provisions always supersede the implied covenant") *rev'd on other grounds*, 68 A.3d 665, 669 (Del. 2013).

The damages Mr. O'Grady seeks to recover for breach of the covenant of good faith and fair dealing "are the same damages he seeks on his breach of contract claim—which precludes his assertion of a claim for breach of the good faith covenant." *Karmilowicz,* 2011 WL 2936013, at *9. Moreover, Mr. O'Grady "cannot rely on [the breach of implied covenant of good faith and fair dealing] doctrine to receive compensation that violates the terms of the [contracts] themselves, which is what [plaintiff] is trying to do with this lawsuit." *Id.*

Further, Mr. O'Grady's assertion that BlueCrest terminated his employment "willfully" or in "bad faith" are conclusory and unsupported by the facts. Mr. O'Grady was terminated *for cause* because he violated company policy and put BlueCrest's business at risk. Indeed, if Mr. O'Grady was as successful as he claims (*see, e.g.*, Compl. ¶¶ 3, 45, 48-52, 55-59), it would be short-sighted and nonsensical for BlueCrest to terminate him without cause, given the profits he claims to have generated for BlueCrest.

## IV. MR. O'GRADY'S NON-CONTRACT CLAIMS ARE FATALLY DEFICIENT AND SHOULD BE DISMISSED FOR THIS REASON TOO

### A. Mr. O'Grady's Claim For Breach Of An Implied Contract Is Fatally Deficient

Not only is Mr. O'Grady's implied contract claim impermissibly duplicative of his claim for breach of contract, it is also legally defective. "Under New York law, absent a written agreement between the parties, 'a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'" *Karmilowicz,* 2011 WL 2936013, at *10, citing *Bader v. Wells Fargo Home Mortg.,* 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011) (*quoting Bear Stearns Inv. Prods., Inc. v. Hitachi*

18

*Auto. Prods. (USA), Inc*., 401 B.R. 598, 615 (S.D.N.Y. 2009)); *see also Trincia v. Testardi*, 57 A.2d 638, 642 (Del. Ch. 1948) (implied contracts "are based on intent inferred from acts rather than words" and "presumes a promise on the part of the party benefited to pay a reasonable price for the benefits").

The Complaint alleges that "even without an express written or oral agreement," an implied contract was formed due to the parties' "prior course of dealings."  Compl. ¶¶ 69-70. Contrary to Mr. O'Grady's conclusory allegations, the Complaint does not allege *any* "prior conduct" or "course of dealings" that could possibly give rise to an implied contract. To the extent BlueCrest previously awarded Mr. O'Grady a year-end bonus, any such payment would have been consistent with the terms of the Employment Agreement, *i.e.*, at BlueCrest's discretion and while Mr. O'Grady was still employed at BlueCrest.  Thus, the Complaint fails to allege that an implied contract exists.  *See Soley v. Wasserman*, 823 F. Supp. 2d 221, 230 (S.D.N.Y. 2011) ("[A] contract cannot be implied *in fact* where the facts are inconsistent with its existence . . . or where there is an express contract covering the subject-matter involved.") (quoting *Bader,* 773 F. Supp. 2d at 413); *see also Creditors Comm. of Essex Builders, Inc. v. Farmers Bank*, 251 A.2d 546, 548 (Del. 1969) ("A contract will be implied in fact only when the Court may fairly infer such an intent from the evidence.").

Further, in New York, "[f]or a breach of implied contract claim to successfully recover an employee's unpaid incentive compensation, 'the claimant must have a reasonable expectancy of receiving compensation.'"  *Karmilowicz,* 2011 WL 2936013, at *11, citing *DeSantis v. Deutsche Bank Trust Co. Am., Inc.,* 501 F. Supp. 2d 593, 600 (S.D.N.Y. 2007).  For the same reasons set forth in *Karmilowicz,* Mr. O'Grady's purported "expectation of receiving such compensation was unreasonable." 2011 WL 2936013, at *10.  As the Court articulated:

> The [agreements] place sole discretion of awarding any money with [the defendant] and set forth conditions—including active employment—on receiving any such payments. Moreover, neither [the agreement] nor any statement allegedly made by Defendant's agent . . . guaranteed Plaintiff incentive or severance payment. Thus, it is impossible for Plaintiff to have reasonably believed he was entitled to payment of any money from Defendant, and his breach of implied contract claim must fail.

*Id.* at \*11.

So too here.  As discussed above, the Employment Agreement gave BlueCrest the sole discretion to award bonuses and required active employment at the time of payment.  Ex. 1, at § 3.  Neither the Employment Agreement nor any statement allegedly made by BlueCrest guaranteed Mr. O'Grady a bonus or severance payment.  Thus, Mr. O'Grady could not have reasonably believed he was entitled to the payments he seeks, and his claim for breach of an implied contract must fail.

### B.    Mr. O'Grady's Claim For Unjust Enrichment Is Similarly Fatally Deficient

Mr. O'Grady's unjust enrichment claim also fails because he does not actually allege any unjust enrichment.  "To state a claim of unjust enrichment under New York law, the plaintiff must allege (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff."  *Karmilowicz,* 2011 WL 2936013, at \*11; *see also Raul v. Rynd*, 929 F. Supp. 2d 333, 349 (D. Del. 2013) (defining unjust enrichment under Delaware law as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience"), citing *Schock v. Nash,* 732 A.2d 217, 232 (Del. 1999) (internal quotation marks omitted).

For the same reasons articulated in *Karmilowicz,* Mr. O'Grady fails to allege any facts to show that BlueCrest was "unjustly" enriched at his expense.  Mr. O'Grady merely alleges that BlueCrest refused to compensate him for services he performed under the "expectation of receiving the compensation promised to him."  Compl. ¶ 74; *see also Karmilowicz,* 2011 WL 2936013, at *11 (rejecting unjust enrichment claim based on an identical allegation).  Indeed, BlueCrest compensated Mr. O'Grady by paying him the Base Salary set forth in the Employment Agreement, "which means Defendant did not benefit unfairly from Plaintiff's work."  *Id.* at *12. As the Court properly noted, "[i]ncentive compensation was awarded at Defendant's discretion to reward exceptional employees by supplementing their salaries, not to compensate them for services performed—and even if awarded was always awarded in estimated amount and was subject to never being paid at all."  *Id.*

### C.      Mr. O'Grady's Claim For Promissory Estoppel Is Also Fatally Deficient

Mr. O'Grady's claim for promissory estoppel is not only duplicative, but fatally defective.  To plead a cause of action for promissory estoppel under New York law, a plaintiff must allege: "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance."  *Textiles Network Ltd. v. DMC Enters., LLC*, No. 07-CV-0393, 2007 WL 2460767, at *5 (S.D.N.Y. Aug. 31, 2007), quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000); *see also J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 457 (D. Del. 2013) ("A promissory estoppel claim requires 'that defendant made a promise with intent to induce action or forbearance, that plaintiff actually relied on the promise, and that he suffered injury as a result.'"), citing *VonFeldt v. Stifel Fin. Corp.,* 714 A.2d 79, 87 (Del. 1998).

Mr. O'Grady alleges that BlueCrest made a "clear and unambiguous promise, upon his agreement to remain employed with Defendant, that Plaintiff would be unconditionally paid his Accrued Obligations." Compl. ¶ 81. But as the Court held in *Karmilowicz,* the terms of the Employment Agreement "are inconsistent with any such promise." 2011 WL 2936013, at *12 (rejecting identical allegation that the plaintiff relied on defendant's "'clear and unambiguous promise . . . that Plaintiff would be unconditionally paid his Accrued Obligations' to his detriment, choosing to remain employed with Defendant.").

Moreover, Mr. O'Grady "does not plead any 'clear and unambiguous promise' that he would receive incentive compensation payments." *Id.* Mr. O'Grady merely alleges that BlueCrest made "unequivocal and express verbal promises, representations and guarantees." Compl. ¶ 82. Yet, not one allegation suggests that BlueCrest in fact made *any* promises to pay Mr. O'Grady a bonus, let alone a "clear and unambiguous" promise necessary to assert a claim for promissory estoppel.[9] *Karmilowicz*, 2011 WL 2936013, at *12 (finding that the statement relied upon in the plaintiff's complaint was "anything but a clear and unambiguous promise," as the defendant's agent merely indicated that he was "confident" but not certain that the plaintiff would receive a bonus). *Id.* Indeed, "[i]t would be absurd for this Court to allow a promissory estoppel claim to proceed" in such circumstances. *Id.*

### D.    Mr. O'Grady's Claim For An Accounting Is Also Fatally Deficient

Mr. O'Grady's "claim" for an accounting is baseless. "A party seeking an accounting must first establish four conditions: (1) relations of a mutual and confidential nature; (2) money

---

[9]    Equally baseless is the conclusory and unsupported allegation that BlueCrest "induced" Mr. O'Grady to leave SAC Capital and join BlueCrest. Compl. ¶ 4. As Mr. O'Grady told BlueCrest personnel, he was terminated by SAC Capital. Moreover, not one allegation purports to show that Mr. O'Grady was promised a bonus to "remain employed" at BlueCrest as he claims. *See, e.g.*, Compl. ¶¶ 28-33, 39, 81-84.

or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 515 (S.D.N.Y. 2012) (citations omitted).[10]  Setting aside the Complaint's failure to allege any facts to support a fiduciary relationship between Mr. O'Grady and BlueCrest,[11] Mr. O'Grady's assertion that he has "no adequate remedy of law" and that he is "entitled to an accounting of all monies, property, funds and assets" maintained by BlueCrest "to determine the value of Plaintiff's Accrued Obligations" is contradicted by the Complaint itself, which states (repeatedly) the exact amount of "Accrued Obligations" to which Mr. O'Grady claims to be entitled.  *See, e.g.*, Compl. ¶¶ 7-8, 54, 59, 60-61, 87.

## V.   NEW YORK LABOR LAW § 193 DOES NOT APPLY TO UNPAID BONUS COMPENSATION

Mr. O'Grady also fails to state a claim under New York's Labor Law § 193.  *First*, as the Second Circuit held in *Karmilowicz*, a plaintiff "cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages."  *Karmilowicz*, 494 F. Appx. at 158, citing *Tierney v. Capricorn Investors, L.P.,* 189 A.D.2d 629, 632 (N.Y. App. Div. 1993).  For the reasons discussed above, Mr. O'Grady is not entitled to a bonus or a severance payment, thus precluding any claims for "wages" under New York Labor Law.

---

[10]   Moreover, an accounting is considered an equitable *remedy* under New York law. *See, e.g., Defazio v. Wallis,* No. 008715-08, 2009 WL 5213678, at *6 (N.Y. Sup. Ct. Dec. 7, 2009) (referring to an accounting as a "remedy" that "is equitable in nature"); *Spitzer v. Schussel,* 792 N.Y.S.2d 798, 800-01 (N.Y. Sup. Ct. 2005) (same).

[11]   The Complaint conclusorily alleges that "[a]t all relevant times, Defendant owed Plaintiff a fiduciary duty."  Compl.  ¶ 102.

*Second*, New York Labor Law Section 193 does not apply to unearned bonus compensation.  *See Levion*, 822 F. Supp. 2d at 403-04 ("[B]onus payments contingent and dependent, at least in part, on the financial success of the business enterprise, and based on factors outside the scope of the employee's actual work, are not 'wages' under the meaning of Section 193"), citing *Truelove v. Ne. Capital & Advisory, Inc.,* 715 N.Y.S.2d 366, 368 (2000); *Bader*, 773 F. Supp. at 417 ("the term wages does not include bonus, profit-sharing, and other forms of incentive compensation unless the incentive compensation is already 'earned' by the employee.") (quoting *Koss v. Wackenhut Corp.,* 704 F. Supp. 2d 362, 369 (S.D.N.Y. 2010)).  "A bonus is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer."  *Koss*, 704 F. Supp. 2d at 369*; Dean Witter Reynolds, Inc. v. Ross,* 429 N.Y.S.2d 653, 658 (1st Dep't 1980) (finding that incentive pay that depended on the overall output of the department did not constitute a "wage")*.*

The amount of Mr. O'Grady's bonus (if any) would have depended in part on the annual performance of BlueCrest's business.  *See, e.g.*, Ex. 2.  Thus, to the extent Mr. O'Grady would have received a bonus, it could not have been "earned" or "vested" prior to the end of 2014 (*i.e.*, six months *after* Mr. O'Grady was terminated).[12]  *Bader,* 773 F. Supp. 2d at 418 ("Where a compensation plan provides that incentive compensation is not earned until the end of a

---

[12]   Moreover, Mr. O'Grady's attempt to label his bonus a "commission" does not make it so.  *Compare Int'l Paper Co. v. Suwyn,* 978 F. Supp. 506, 514 (S.D.N.Y. 1997) (where incentive compensation is based on factors outside an individual employee's performance, and bonus was not guaranteed as a term of employment, incentive compensation did not constitute wages under New York Labor Law) *with Xu v. J.P. Morgan Chase & Co.*, No. 01–CV-8686, 2003 WL 25964617, at *4 (S.D.N.Y. Sept. 24, 2003) (bonus formula based entirely on employees performance, did not depend on any factors outside the scope of his actual work, and which was not left to the employer's discretion was more akin to a "commission" under New York Labor Law).

production period—when appropriate adjustments can be made to calculate the 'net figure[s]' to which employees are entitled—the incentive compensation does not vest, and thus does not qualify as 'wages,' until after the amounts due are determined."), citing *Levy v. Verizon Info. Serv., Inc.,* 498 F. Supp. 2d 586, 601 (E.D.N.Y. 2007).  Indeed, the profits Mr. O'Grady claims to have generated for BlueCrest by June 2014 could have easily been lost by year-end.  In which case, even under Mr. O'Grady's false construct, his bonus amount would have been zero.

*Finally*, Section 193 applies only to amounts that are *deducted*—it does not apply to amounts that are unpaid, which is what Mr. O'Grady alleges in his Complaint.  *See Monagle v. Scholastic, Inc.,* No. 06-CV-14342, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007) (stating that New York Labor Law applies only to "deductions from wages").

## VI.   MR. O'GRADY IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS

The Complaint seeks attorney's fees and costs on the basis that "the undersigned, on behalf of Plaintiff have in good faith, attempted to negotiate a reasonable resolution with Defendant without having to refer this matter to this forum for adjudication."  Compl. ¶ 107.  On October 23, 2014, Mr. O'Grady's attorney sent an email to BlueCrest's in-house counsel attaching a draft complaint along with a note:  "Attached is a draft complaint.  Please advise if you care to adjust this matter prior to filing."  This hardly qualifies as a "good faith" attempt to negotiate a resolution.  In any event, even if there had been a "good faith" attempt to negotiate a resolution, it does not justify an award of attorney's fees.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety and with prejudice.

Dated:   April 8, 2015              By:   ___/s/ Maya D. Cater_____
         New York, New York              Anthony P. Alden (*pro hac vice* application
                                               forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100
anthonyalden@quinnemanuel.com

Maya D. Cater
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
mayacater@quinnemanuel.com

*Attorneys for Defendant BlueCrest Capital
Management LLP*

26