UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x
                                :

**NICHOLAS L. O'GRADY**,              :      Civ No.  15 Civ. 01108 (SHS)
                                  :

             Plaintiff,            :
                                  :
                                  :

             - against -          :
                                  :
                                  :

**BLUECREST CAPITAL MANAGMENT LLP**,   :
                                  :

             Defendant.          :
                                  :
                                  :
                                  :
--------------------------------------------------------------------- x

---

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS**

---

**S A C K  &  S A C K ,  L L P**

Attorneys for Plaintiff

110 East 59th Street, 19th Floor
New York, New York 10022-2050
(212) 702-9000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... II

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS ................................................................. 2

ARGUMENT ..................................................................................... 7

I.  DEFENDANT DOES NOT MEET THE HIGH STANDARD
    WARRANTING DISMISSAL UNDER FRCP 12(B)(6) ...................... 7

II. O'GRADY'S WRITTEN BREACH OF CONTRACT CLAIM
    SHOULD NOT BE DISMISSED ............................................................ 9

    A.  WHETHER THE EQUITIES COMPENSATION MODEL IS A
        BINDING CONTRACT IS A FACT QUESTION THAT MUST
        BE DETERMINED BY A FACTFINDER BASED ON THE
        TOTALITY OF CIRCUMSTANCES ........................................................ 10
    B.  THE EQUITIES COMPENSATION MODEL NEITHER
        MODIFIES NOR CONTRADICTS THE EMPLOYMENT
        AGREEMENT, WHICH IS INTEGRATED ONLY WITH THE
        INCLUSION OF THE EQUITIES COMPENSATION MODEL ........................ 11
    C.  THE PLAIN MEANING OF THE EMPLOYMENT AGREEMENT
        SUPPORTS THE INCORPORATION OF THE EQUITIES
        COMPENSATION MODEL ................................................................ 12
    D.  THE EQUITIES COMPENSATION MODEL WAS RATIFIED
        THROUGH THE PARTIES' COURSE OF CONDUCT ................................ 13
    E.  PLAINTIFF'S BONUS IS A WAGE AND THEREFORE NON-
        FORFEITABLE ............................................................................. 14
    F.  O'GRADY IS ENTITLED TO SEVERANCE PAY ................................ 18

III. O'GRADY STATES A VALID LABOR LAW CLAIM ...................... 20

IV. PLAINTIFF STATES VALID CLAIMS UNDER QUASI-
    CONTRACT THEORIES ........................................................................ 21

    A.  PLAINTIFF STATES A VALID CLAIM FOR BREACH OF
        IMPLIED CONTRACT .................................................................... 22
    B.  PLAINTIFF STATES A VALID CLAIM FOR QUANTUM
        MERUIT .................................................................................... 23
    C.  PLAINTIFF STATES A VALID CLAIM FOR PROMISSORY
        ESTOPPEL ................................................................................. 24

CONCLUSION ................................................................................ 26

I

## TABLE OF AUTHORITIES

### CASES

Absalom Gonzalez-Jimenez v. United States of America, 2000 U.S. Dist. LEXIS 14040 (S.D.N.Y. 2000) ................................................................................................ 8

Aiello v. Burns Intern. Sec. Services Corp., 110 A.D.3d 234, 245, 973 N.Y.S.2d 88 (N.Y.A.D. 1st Dep't.2013) ...................................................................................... 18

Aircraft Servs. Resales LLC v. Oceanic Capital Co., No. 09 CIV. 8129 PKC, 2013 WL 4400453, at *4 (S.D.N.Y. Aug. 14, 2013) .................................................. 17

Apogee, 807 F.Supp. at 1022 ........................................................................................ 25

Arc Electrical Constr. Co., Inc. v. George A. Fuller Co., 24 N.Y.2d 99, 299 N.Y.S.2d 129, 247 N.E.2d 111 (1969) .......................................................................... 24

Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon, 106 A.D.3d 582, 583, 965 N.Y.S.2d 473 (1st Dep't 2013) ........................................................................................ 15

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) ...................................................................... 8

Ashcroft v. Iqbal, 490 F.3d 143 (2nd Circ. 2008) ......................................................... 8

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). ..................... 7, 8

Brooke Group v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (1996) ............................... 15

Brown Bros. Elec. Constr. v. Beam Constr. Corp., 41 N.Y.2d 397, 399-400, 393 N.Y.S.2d 350 (1977) .............................................................................................. 12, 13

Carter v. Katz, 465 N.Y.S.2d 991 (N.Y.Sup.Ct.1983) .................................................. 28

Caruso v. Allnet Communications Servs.,242 A.D.2d 484, 484-485, 662 N.Y.S.2d 468 (1st Dep't 1997) ..................................................................................................... 19

Cauff, Lippman & Co., v. Apogee Finance Group, Inc., 807 F. Supp. 1007, 1992 U.S. Dist. LEXIS 12350 (S.D.N.Y. 1992) .................................................................... 23

Citibank, N.A. v. Walker, 12 A.D.3d 480, 787 N.Y.S.2d 48 2d Dep't 2004) .............. 29

City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905, 685 N.Y.S.2d 381 (4th Dep't 1999) ................................................................................................................... 29

Cohen v. Koenig, 25 F.3d 1168 (2d Cir. 1994) .............................................................. 9

Conley v. Gibson, 355 U.S. 41 (1957) ........................................................................... 8

Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998) ........................................................ 10

Cosmas v. Hasset, 886 F.2d 8 (2d Cir. 1989) ................................................................. 9

Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39 (2d Cir. 1995)..................... 31

Danovitch v. Gersten Savage LLP, 2013 N.Y. Misc. LEXIS 2977, at *11 (Sup.
Ct. N.Y. 2013).............................................................................................................. 22

Derven v. PH Consulting, Inc., 427 F Supp 2d 360, 368 (SDNY 2006) ....................... 17

Diamond Castle Partners IV PRC, L.P. v. IAC/InteractiveCorp, 918 N.Y.S.2d 73
(1st Dep't 2011) ............................................................................................................ 15

Drake v. Seaman, 97 N.Y. 230, 234 (1884).................................................................. 11

Ellenberg Morgan Corp. v. Hard Rock Cafe, 116 A.D.2d 266, 500 N.Y.S.2d 696,
699 (1st Dep' 1986) ...................................................................................................... 25

Fiorenti v. Central Emergency Physicians, P.L.L.C., 187 Misc. 2d 805 (Sup Ct.
Nassau County 2001).................................................................................................... 23

Firtell v. Update, Inc., 17 Misc.3d 1101(A), No. 604290/2006, 2007 WL
2756965, at *2 (N.Y.Sup.Ct. Sept. 20, 2007) ............................................................. 16

Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 370, 795 N.Y.S.2d 491,
828 N.E.2d 593 (2005).................................................................................................. 17

Furia v. Furia, 116 A.D.2d 694, 498 N.Y.S.2d 12 (2d. Dept. 1986) ........................... 11

Gant v. Wallingford Bd. of Educ., 69 F.3d 669 (2d Cir. 1995) ..................................... 9

Giuntoli v. Garvin Guybutler Corp., 726 F. Supp. 494 (S.D.N.Y. 1989)..................... 27

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985)....................................................... 10

Gualandi v. Adams, 385 F3d 236, 241 (2d Cir 2004).................................................. 14

Guggenheimer v. Bernstein Litowitz Berger & Grossmann LLP, 11 Misc.3d 926,
931, 810 N.Y.S.2d 880, 885 (Sup. Ct. N.Y. Co. 2006) ............................................. 21

In re Gulf Oil/Cities Service Tender Offer Litigation, 725 F. Supp. 712, 737 n.9,
989 U.S. Dist. LEXIS 10585 (SDNY 1989)................................................................ 24

International Custom Assocs. v. Ford Motor Co., 893 F. Supp. 1257 (S.D.N.Y.
1995) ............................................................................................................................ 29

Jemzura v. Jemzura, 36 N.Y.2d 496, 330 N.E.2d 414, 396 N.Y.S.2d 400 (1975) ........... 27, 28

John J. Kirlin, Inc. v. Conopco, Inc., No. 94 Civ. 2675, 1995 WL 15468
(S.D.N.Y. 1995) ......................................................................................................... 27

JP Morgan Chase v. J.H. Electric of New York, Inc., 69 A.D.3d 802, 803, 893
N.Y.S.2d 237, 239 (2d Dept. 2010) ......................................................................... 11

Kaible v. U.S. Computer Group, 27 F. Supp. 2d 373, 1998 U.S. Dist. LEXIS 19214
(S.D.N.Y. 1998).......................................................................................................... 7

Kamdem-Ouaffo v. Pepsico, Inc., 14-CV-227 KMK, 2015 WL 1011816, at *9
(SDNY Mar. 9, 2015) ............................................................................................... 14

Kenneth Dash v. The Equitable Life Assurance Society of the United States and
Ecuicor—Equitable HCA Corp., 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708;
59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990) .............................................. 9

Klein v. Torrey Point Group, LLC, 979 F Supp 2d 417, 431 (SDNY 2013).............................. 16

Knight Sec. v. Fiduciary Trust Co., 5 A.D.3d 172, 774 N.Y.S.2d 488 (1st Dep't
2004) ......................................................................................................................... 31

Kolchins v. Evolution Markets, Inc., 2015 NY Slip Op 02863 (1st Dept Apr. 2,
2015) ......................................................................................................................... 19

Kooleraire Service & Installation Corp. v. Board of Educ., 28 N.Y.2d 101, 320
N.Y.S.2d 46, 268 N.E.2d 782 (1971)....................................................................... 24

LaBounty v. Adler, 933 F.2d 121 (2d Cir. 1991)........................................................ 10

Land-Site Contr. Corp. v. Marine Midland Bank, 177 A.D.2d 413, 576 N.Y.S.2d
255 (1st Dep't 1991) ................................................................................................. 27

Lanzet v. Eastern Wholesale Fence, Co., 213 A.D.2d 601, 602, 624 N.Y.S.2d 443,
444 (2nd Dept. 1995) ............................................................................................... 11

Matter of Adams, 1 A.D.2d 259262, 149 N.Y.S.2d 849 (4th Dep't 1956), aff'd. 2
N.Y.2d 796, 140 N.E.2d 549, 159 N.Y.S.2d 698 (1957)........................................... 30

Matter of Express Indus. & Term. Corp. v. New York State Dep't of Transp., 93
N.Y.2d 584, 589, 693 N.Y.S.2d 857 (1999) ............................................................. 12

Mirchel v. RMJ Securities Corp., 613 N.Y.S.2d 876 (1st Dep't. 1994)....................... 18

Misek v. Downstairs Cabaret Theatre, Inc., 28 Misc. 3d 830, 906 NYS2d 439
(Cty. Ct. Rochester 2010) ........................................................................................ 20

Moors v. Hall, 143 A.D.2d 336, 337-338, 532 N.Y.S.2d 412 (2d Dep't 1988) .......... 30

IV

Morris v. 702 E. Fifth St. HDFC, 46 A.D.3d 478, 479, 850 N.Y.S.2d 6 (1st Dept. 2007) ............................................................................................................... 10

Nakamura v. Fuji, 253 A.D.2d 387, 677 N.Y.S.2d 113 (1st Dep't 1998) .................................... 28

Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir.1996) ............................................................................................................. 26

Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997) ................................................ 8

Paramount Film Distrib. Corp. v. State of New York, 30 N.Y.2d 415, 285 N.E.2d 695, 334 N.Y.S.2d 388 (1972) ............................................................................... 29

Pearce v. Manhattan Ensemble Theater, Inc., 2007 U.S. Dist. LEXIS 16487 (S.D.N.Y. 2007) .................................................................................................. 31

People v. Wood, 121 N.Y. 522 (1890) ............................................................................... 28

Piven v. Harwood Feffer LLP, 14 CIV. 6601 LAK, 2015 WL 1267423, at *1-2 (SDNY Mar. 11, 2015) ......................................................................................... 26

Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04 Civ. 9578(TPG), 2006 WL 903184, at *3 (S.D.N.Y. Apr. 7, 2006) .................................................................. 26

Prescott v. Merchants Refrigerating Co. Inc., 90 A.D.2d 724, 455 N.Y.S.2d 610 (1st Dep't 1982) ............................................................................................... 13

Reilly v. NatWest Mkts. Group, 181 F.3d 253, 264-65 (2d Cir. 1999) ....................................... 19

Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 15-16, 945 N.Y.S.2d 593, 601-02 (2012) .............................................................................. 18, 19, 33, 34

S.E.C. v. U.S. Environmental, Inc., 155 F.3d 107 (2d Cir. 1998) .................................................. 8

Sharp v. Patterson, 2004 WL 2480426  at *8 (S.D.N.Y. 2004) .................................................. 28

Signature Brokerage Inc. v. Group Health Inc., 5 A.D.3d 196, 772 N.Y.S.2d 812 (1st Dept. 2004) ............................................................................................... 11

Simon v. Electrospace Corporation, 28 N.Y.2d 136, 142, 320 N.Y.S.2d 225, 269 N.E.2d 21 (1971).................................................................................................. 25

Southold Development Corp., 173 B.R. 63, 74-75 (EDNY 1994) ............................................. 25

Starter Corp. v Converse, Inc., 170 F3d 286, 295 (2d Cir 1999), citing, E. Allan Farnsworth, Contracts § 7.3 (2d ed.1990)..................................................................... 13

Sunshine Steak, Salad & Seafood, Inc. v. W. I. M. Realty, Inc., 135 A.D.2d 891, 522 N.Y.S.2d 292 (3d Dep't 1987)............................................................................. 23

Telemundo Grp., Inc. v. Alden Press, Inc., 181 A.D.2d 453, 580 N.Y.S.2d 999, 1000 (App.Div.1992) ............................................................................................... 14

Trott v. Dean Witter & Co., 438 F. Supp. 842, 844,  affd, 578 F.2d 1370 (2d Cir. 1978) ......................................................................................................................... 29

Truelove v. Northeast Capital & Advisory Inc., 268 A.D.2d 648, 702 N.Y.S.2d 147 (3rd Dep't 2000).................................................................................................... 19, 33

Venetis v. Stone, 31 Misc.3d 1205(A), 927 N.Y.S. 2d 820, 2011 WL 1226950 (Sup. Ct. N.Y. Co. March 8, 2011) .............................................................................. 13

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995), cert. denied, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996) ...................................................... 9

W.B. David & Co. v. DWA Communications, Inc., No. 02 Civ. 8479 WL 369147, at *2 (S.D.N.Y. 2004) ................................................................................................ 28

Weiner v. Diebold Group, Inc., 173 A.D.2d 166, 568 N.Y.S.2d 959 (1st Dep't 1991) ................................................................................................................... 20, 21, 22

Weisman v. LeLandais, 532 F.2d 308 (2d Cir. 1976) ............................................... 10

Zheng v. City of New York, 19 N.Y.3d 556, 572-73, 950 N.Y.S.2d 301 (2012)........................ 12

# PRELIMINARY STATEMENT

Plaintiff, Nicholas O'Grady ("*O'Grady*" or "*Plaintiff*"), by his attorneys Sack & Sack LLP, hereby respectfully submits this Memorandum of Law in opposition to BlueCrest Capital Management LLP's ("*BlueCrest*" or "*Defendant*") Motion to Dismiss the Complaint.

Defendant's motion is an attempt to divert the Court from its own efforts to avoid its contractual obligations to O'Grady.  In its Motion, Defendant refuses to accept the allegations contained in the Complaint as true and instead, insert its own version of the facts in support of its Motion.

On October 31, 2013, O'Grady and Defendant entered into a binding contract setting forth all terms of O'Grady' employment with Defendant (the "*Employment Agreement*").

The contract specifically provided that O'Grady would be provided a bonus plan at Defendant's sole and absolute discretion.  On the very same day the parties entered into the Employment Agreement, Defendant exercised that discretion and provided O'Grady with a bonus plan providing for a bonus based upon his personal performance equal to 18% of his profits.  Under New York law such a bonus – paid under the bonus plan, which does not modify the terms of the Employment Agreement and, thus, become part of the Employment Agreement - constitutes commissions and is considered a wage that is not forfeitable, even if O'Grady is terminated prior to the payment of such bonus.

In 2014, consistent with the bonus plan, and consistent with the promises made to O'Grady upon his hire, O'Grady indeed was paid a 2013 bonus based on his personal performance of 18% of his profits.  O'Grady continued to perform throughout 2014, generating profits on behalf of Defendant.  On June 4, 2014, Defendant terminated O'Grady without cause. Instead of paying O'Grady his earned commission bonus in accordance with the bonus plan and

the course of conduct established by the parties, Defendant stuffed O'Grady's wages in its pockets and showed him the door without paying him a dollar of his 2014 bonus, or the contractual severance set forth in his Employment Agreement.

Under established New York law, the issue of whether parties in circumstances like these manifested their objective intent to be bound is a question of fact. The Court of Appeals and the First Department (and the District Courts applying New York law) have both held that such a question must be determined by the fact-finder, based on the totality of facts and circumstances surrounding the purported agreement, and is not amenable to resolution on a motion.

Nevertheless, Defendant moves to dismiss, misstating the plain language of the Employment Agreement and ignoring well-known principles of procedure concerning accepting the truth of the allegations set forth in the Complaint.

Accordingly, for the reasons more specifically set forth herein, Defendant's Motion to Dismiss must be denied in its entirety.

## S T A T E M E N T   O F   F A C T S

Plaintiff respectfully refers the Court to the Complaint filed in this matter for a full rendition of Plaintiff's allegations. Plaintiff, however, does set forth some background facts as follows:

## BACKGROUND

O'Grady is a senior level executive and extremely well-respected manager and investor with an impressive track record in the Hedge Fund Industry for over ten (10) successful years. See, Complaint ¶1.

In June 2013, O'Grady was contacted by Zachary White ("*White*") of Attica Executives, a head-hunting firm retained by the British financial services fund, BlueCrest. At that time,

White informed O'Grady that Larkin had joined BlueCrest from Nomura as Head of Equities, and was now looking to build out a large multi-strategy, industry-focused equities business.  Id. at ¶24.

At the time, BlueCrest was largely unknown in the U.S. investment community and, to the extent that people had heard of BlueCrest, they were skeptical of its ability to create a multi-manager platform that could compete with large U.S. hedge funds.  Id. at ¶25.  Previously, BlueCrest had built out an equities business but had been forced to shut it down.  Id. at ¶26.

White made it clear to O'Grady that BlueCrest now needed someone with a very impressive track record and reputation in the long/short equities business to "**build a case for attracting top-tier talent and a sustainable platform.**"  Id. at ¶27.

The BlueCrest opportunity was a perfect fit for O'Grady and was a natural step in his career growth where he would be able to use his experience in running equity funds to build a business, with the significant financial backing of an established hedge fund based in the United Kingdom.  Id. at ¶30.

In October 2013, Larkin explained to O'Grady a build-out plan that was well-defined and clearly involved the following:

(a)    BlueCrest needed to build the business and create a presence in the United States;

(b)   BlueCrest wanted to hire O'Grady because of his track record, management skills and unblemished reputation in the hedge fund field;

(c)   BlueCrest needed credibility and a reputation in the U.S.;

(d)   BlueCrest would provide capital for O'Grady to build the business in the United States, and would "be disappointed if he was not managing $1 billion by the end of the year";

(e)   BlueCrest had failed in its previous attempt at the equities business and needed to put

its investors' money to work, which, until now, was suffering from low to negative returns in their existing strategies;

 (f) O'Grady's title at BlueCrest was to be Portfolio Manager, Equities;

 (g) O'Grady would report directly to Larkin; and

 (h) O'Grady would be the largest equity allocation in the US, with sole decision-making authority to run his fund, fitting within BlueCrest's overall risk management limits.  Id. at ¶31.

 Most important, in order to fully incentivize O'Grady, Larkin promised O'Grady that his bonus compensation will be expressly linked to his personal performance.  Id. at ¶32.

### O'GRADY IS HIRED AT BLUECREST

 In or around October 2013, O'Grady met with Jonathan Larkin at BlueCrest's New York City offices.  Larkin informed O'Grady that, due to prior due diligence from Nomura and O'Grady's solid track record.  BlueCrest made O'Grady a job offer that included a bonus payout of 18% based upon his personal performance.  Id. at ¶34.

 Consistent with BlueCrest's offer, on or around October 31, 2013, O'Grady received written confirmation in the form of an employment agreement and a copy of the 18% bonus plan referenced therein (Complaint Ex. A, the "*Employment Agreement*").  The bonus plan called for a fixed 18% commission on gross profits he generated, less direct trading expenses, which O'Grady previously discussed with Larkin.  Id. at ¶37, Complaint Ex. B.

### BLUECREST'S WRITTEN PROMISES OF COMMISSION COMPENSATION

 According to the Employment Agreement, O'Grady's compensation was made up of two components:  (1) an annual base salary of $250,000 (Complaint Ex. A, ¶ 2); and (2) participation in "any bonus programs the Company may decide to establish from time to time to cover

employees similarly situated to you, subject to the provisions of the applicable bonus program." Id. at ¶ 26, Complaint Ex. A, ¶ 3.

On or around the same day BlueCrest entered into the Employment Agreement with O'Grady, O'Grady was provided with the written "bonus program" specifically referenced to in the Employment Agreement. Id. at ¶38, Complaint Ex. B.

According to the bonus program, entitled  "Equities Compensation Model", BlueCrest confirms that O'Grady would be paid 18% of his personal performance P&L (the "*P&L Commission*"). Id. at ¶39. The P&L Commission given to O'Grady in writing is consistent with the commission compensation promised to him by Larkin as an inducement to joining BlueCrest and performing his duties under the Employment Agreement. Id. at ¶39, Complaint Ex. B. The Equities Compensation Model set forth specific details of how O'Grady's P&L Commission would be calculated based upon his personal performance. Id. at ¶40.

Because the "bonus program" referred to in the Employment Agreement was confirmed by the Equities Compensation Model, which confirms the means of measuring the amount of O'Grady's P&L Commission compensation in respect of his labor and services, which is directly tied to his personal performance, the P&L Commission earned by O'Grady pursuant to the Equities Compensation Model is considered non-forfeitable "wages" under New York's Labor Law. Id. at ¶41.

Further confirmation that O'Grady's "bonus" was considered a commission, even according to BlueCrest, is BlueCrest's deduction of O'Grady's base salary from the calculation of O'Grady's P&L Commission. Id. at ¶42, Complaint Ex. B. O'Grady never received any other document purporting to be an "applicable bonus program."

## O'GRADY'S PERFORMANCE

On December 2, 2013, O'Grady began working at BlueCrest. <u>Id.</u> at ¶43. O'Grady quickly got up to speed and began to prepare for the launching of the new fund. Around mid-December 2013, O'Grady began deploying capital. <u>Id.</u> at ¶44.

Despite deploying less than $100 million by the end of 2013, O'Grady still managed to generate approximately $570,000 in profits by year-end. <u>Id.</u> at ¶45.

In or around January 2014, O'Grady received his 2013 contractual bonus payout "GUARANTEE" based on his profits calculated by applying the 18% rate set forth in the Equities Compensation Model. <u>Id.</u> at ¶ 46.

The email specified the following (in part):

> Nicholas,
> Please find attached your latest comp file.
> I have also attached a file detailing your team's salary and **guarantees**. Please can you populate this file with any proposed discretionary awards for your team and return to me on Monday…

<u>Id.</u> at ¶ 47.

In 2014, O'Grady's success continued as his fund generated significant returns of over $7 million over the first two months while still deploying just $100 million in capital into investment positions. <u>Id.</u> at ¶¶ 48-49. By June 2014, O'Grady's fund was far and away the best performing fund at BlueCrest, with equity returns nearing 7% in fewer than six months. This was with a portfolio that was generating returns at 2 times the value at risk. <u>Id.</u> at ¶ 51.

## O'GRADY EARNS HIS 2014 COMMISSIONS DESPITE HIS TERMINATION

On or around June 4, 2014, BlueCrest terminated O'Grady's employment without cause. <u>Id.</u> at ¶53.

Through the date O'Grady's employment with BlueCrest was terminated, O'Grady unequivocally earned P&L Commission of $1.284 million. Id. at ¶54.

In 2014 alone, O'Grady generated $8.625 million of profit, which, at his 18% commission less expenses, equates to no less than $1.284 million in commission (i.e. "wages") due and owing to O'Grady.  Id. at ¶59.

Also as a consequence of his termination without "cause", O'Grady is entitled to BlueCrest severance of $20,833, which BlueCrest has refused to pay.  Id. at ¶60, Complaint Ex. A, ¶3.


## **A R G U M E N T**

### I. **DEFENDANT DOES NOT MEET THE HIGH STANDARD WARRANTING DISMISSAL UNDER FRCP 12(B)(6)**

As more fully described herein, Defendant does not meet the stringent standard to obtain dismissal for failure to state a claim.  Kaible v. U.S. Computer Group, 27 F. Supp. 2d 373, 376, 1998 U.S. Dist. LEXIS 19214 at *5 (S.D.N.Y. 1998).

To survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007)(emphasis added).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 556.  Determining whether a complaint states plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), citing Ashcroft v. Iqbal, 490 F.3d 143 (2nd Circ. 2008).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  Id. at 1950.

On a motion to dismiss for failure to state a claim, a complaint should be dismissed only if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his complaint, which would entitle him to relief. S.E.C. v. U.S. Environmental, Inc., 155 F.3d 107 (2d Cir. 1998); Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997); quoting, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

It is more than well-established law, that "on a Motion to Dismiss, the allegations in the complaint are accepted as true." Absalom Gonzalez-Jimenez v. United States of America, 2000 U.S. Dist. LEXIS 14040 (S.D.N.Y. 2000), citing, Cohen v. Koenig, 25 F.3d 1168, 1172-73 (2d Cir. 1994). See, also, Kenneth Dash v. The Equitable Life Assurance Society of the United States and Ecuicor—Equitable HCA Corp., 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708; 59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990). "In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hasset, 886 F.2d 8, 11 (2d Cir. 1989).

The issue before the Court on a Rule 12(b)(6) motion "is not whether [O'Grady] will ultimately prevail, but whether [O'Grady] is entitled to offer evidence to support the claim." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14, (1996). Even if recovery may appear remote and unlikely on the face of the pleading, that is not the test for dismissal. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); citing, Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976).

This honorable Court is well aware that it is not the Court's function to weigh the evidence that might be presented at a trial. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)(emphasis added). This Court must accept the allegations of the Complaint as true, and construe all reasonable inferences in his favor. Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998);

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).

Accordingly, the Court *must* assume the detailed facts set forth in the Complaint as true, and in doing so, must agree that Plaintiff has plausibly stated a claim for breach of contract, breach of implied contract, Unjust Enrichment, Promissory Estoppel, an Accounting and violations of New York's Labor Law.

## II. O'GRADY'S WRITTEN BREACH OF CONTRACT CLAIM SHOULD NOT BE DISMISSED

Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. Morris v. 702 E. Fifth St. HDFC, 46 A.D.3d 478, 479, 850 N.Y.S.2d 6 (1st Dept. 2007); JP Morgan Chase v. J.H. Electric of New York, Inc., 69 A.D.3d 802, 803, 893 N.Y.S.2d 237, 239 (2d Dept. 2010); Furia v. Furia, 116 A.D.2d 694, 498 N.Y.S.2d 12 (2d. Dept. 1986). For a valid contract to exist, it must contain all material terms. Drake v. Seaman, 97 N.Y. 230, 234 (1884). In an employment agreement, duration, compensation and the services to be rendered are material terms. See, e.g., Signature Brokerage Inc. v. Group Health Inc., 5 A.D.3d 196, 772 N.Y.S.2d 812 (1st Dept. 2004); Lanzet v. Eastern Wholesale Fence, Co., 213 A.D.2d 601, 602, 624 N.Y.S.2d 443, 444 (2nd Dept. 1995).

As clearly and appropriately alleged in the Complaint, the parties entered into an express contract to pay O'Grady, among other things, a bonus pursuant to a plan (i.e., the Equities Compensation Model) that was provided to O'Grady on the date he executed the Employment Agreement equal to 18% of his personal performance. Despite that O'Grady's performance under the contract, Defendant breached the agreement by failing to pay him pursuant to the

agreement..   O'Grady has been damaged by Defendant's failure to pay him his owed 2014 commissions as outlined in the Employment Agreement.

A.   **WHETHER THE EQUITIES COMPENSATION MODEL IS A BINDING CONTRACT IS A FACT QUESTION THAT MUST BE DETERMINED BY A FACTFINDER BASED ON THE TOTALITY OF CIRCUMSTANCES**

To create a binding contract, there must be an objective manifestation of the parties' intent to be bound by the agreement.  Matter of Express Indus. & Term. Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857 (1999).  "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract."  Id.  In assessing the parties' intent as expressed by their words and deeds, "disproportionate emphasis is not to be put on any single act, phrase or expression, but, instead on the totality of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain."  Zheng v. City of New York, 19 N.Y.3d 556, 572-73, 950 N.Y.S.2d 301 (2012), quoting, Brown Bros. Elec. Constr. v. Beam Constr. Corp., 41 N.Y.2d 397, 399-400, 393 N.Y.S.2d 350 (1977).

The Court of Appeals has repeatedly instructed that it is for the ***factfinder*** to determine whether extrinsic evidence, like the correspondence and conduct in this case, objectively manifest an intent to form a contract. Zheng, 19 N.Y.3d at 573, 973 N.Y.S.2d 301 ("[W]hile it is the responsibility of the court to interpret written instruments, ***where a finding of whether an intent to contract is dependent as well on other evidence from which differing inferences may be drawn, a question of fact arises***.") (emphasis in original), citing, Brown Bros. Elec. Constr. v. Beam Constr. Corp., 41 N.Y.2d at 400, 393 N.Y.S.2d 350); see, also, Prescott v. Merchants Refrigerating Co. Inc., 90 A.D.2d 724, 455 N.Y.S.2d 610 (1st Dep't 1982) (reversing grant of summary judgment because substantial fact issues existed as to whether a letter, together with

subsequent negotiations between the parties, culminated in an enforceable contract); <u>Venetis v. Stone</u>, 31 Misc.3d 1205(A), 927 N.Y.S. 2d 820, 2011 WL 1226950 (Sup. Ct. N.Y. Co. March 8, 2011) (denying motion to dismiss because question of whether there was a meeting of the minds was for trier of fact).

**B.**   **THE EQUITIES COMPENSATION MODEL NEITHER MODIFIES NOR CONTRADICTS THE EMPLOYMENT AGREEMENT, WHICH IS INTEGRATED ONLY WITH THE INCLUSION OF THE EQUITIES COMPENSATION MODEL**

A written contract is considered integrated when the parties intend it to constitute the complete and final expression of their agreement. <u>Starter Corp. v Converse, Inc.</u>, 170 F3d 286, 295 (2d Cir 1999), citing, E. Allan Farnsworth, Contracts § 7.3 (2d ed.1990).

If anything, there is evidence of just the contrary intent in this case, since the agreement explicitly refers to the establishment of a bonus program that is to govern O'Grady's bonus compensation.  There is nothing in the Complaint to suggest that O'Grady's entitlement to bonus compensation (which is actually a commission under New York law, as argued below), is based upon an oral modification or promise.  Thus, there is no merit to Defendant's implicit parol evidence argument.   See, <u>Gualandi v. Adams</u>, 385 F3d 236, 241 (2d Cir 2004).

Furthermore, the Equities Compensation Model may also be interpreted, however, not as a contract modification, but rather as memorializing promises that were part of the Employment Agreement itself, i.e., the establishment of a bonus plan.  See, <u>Kamdem-Ouaffo v. Pepsico, Inc.</u>, 14-CV-227 KMK, 2015 WL 1011816, at *9 (SDNY Mar. 9, 2015).  Thus, even if the principles of parole evidence are applicable in this instance, the Equities Compensation Model neither modifies nor contradicts the terms of the Employment Agreement.  <u>Telemundo Grp., Inc. v. Alden Press, Inc.</u>, 181 A.D.2d 453, 580 N.Y.S.2d 999, 1000 (App.Div.1992) ( "Extrinsic or parol

evidence is admissible ... where it would not modify or contradict the terms of the contract, but would explain ambiguities in the contract." (internal quotation marks omitted).

### C.   THE PLAIN MEANING OF THE EMPLOYMENT AGREEMENT SUPPORTS THE INCORPORATION OF THE EQUITIES COMPENSATION MODEL

While Defendant argues that payment of bonuses to O'Grady shall be in its "sole and absolute discretion", that interpretation contradicts the plain meaning of the contract.   See, Diamond Castle Partners IV PRC, L.P. v. IAC/InteractiveCorp, 918 N.Y.S.2d 73 (1st Dep't 2011) (It is elementary that clauses of a contract should be read together contextually in order to give them meaning); see, also, Brooke Group v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (1996) (Words and phrases used by the parties in a contract must, as in all cases involving contract interpretation, be given their plain meaning.); See, also, Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon, 106 A.D.3d 582, 583, 965 N.Y.S.2d 473 (1st Dep't 2013) (Single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.) (internal citations omitted)

Defendant desperately attempts to rewrite the clear language of the contract (which supports the applicability of the Equities Compensation Model) to impose upon O'Grady the legal principles of a discretionary bonus.   Specifically, Defendant contends that the language in O'Grady's Employment Agreement confirms that payment of any bonuses by BlueCrest is subject to its "sole and absolute discretion."   However, that is not what the Employment Agreement plainly states.

Read in context, the Employment Agreement actually states that whether and to what extent it shall establish "any bonus programs" "will be subject to the Company's sole and absolute discretion."

Indeed, BlueCrest exercised in "sole and absolute discretion" when it established a bonus program of 18% for O'Grady when it presented to him with the Equities Compensation Model simultaneous with the Employment Agreement.   Of course, according to the Employment Agreement, BlueCrest had the "absolute and sole discretion" not to provide O'Grady with any bonus program whatsoever or could have establish any percentage payout.   It did not.   It established an 18% bonus program, paid O'Grady in accordance with that bonus program, and never issued a subsequent bonus program superceding the Equities Compensation Model. "Payments" under the bonus program after the "award" (i.e., 18%) is established, is not at the "sole and absolute" discretion of Bluecrest either under the terms of the Employment Agreement or well-established New York law.   The only defense to "payments" is in the next sentence discussing deductions when bonus payments are "payable".

At the very least, to the extent this Court is required to favor one reading of the agreement over the other, it must do so in favor of O'Grady.   Klein v. Torrey Point Group, LLC, 979 F Supp 2d 417, 431 (SDNY 2013), citing, Firtell v. Update, Inc., 17 Misc.3d 1101(A), No. 604290/2006, 2007 WL 2756965, at *2 (N.Y.Sup.Ct. Sept. 20, 2007) (New York State courts have validated plaintiffs' claims for post-termination commissions when the employment agreement "was silent or ambiguous as to whether the employee could obtain post-termination commissions, the agreement was drafted by the employer, and the doctrine of contra proferentem dictated that the silence or ambiguity should be construed against the drafter.") Aircraft Servs. Resales LLC v. Oceanic Capital Co., No. 09 CIV. 8129 PKC, 2013 WL 4400453, at *4 (S.D.N.Y. Aug. 14, 2013) ("New York law provides that ambiguities in a contract must be construed against the drafter.")

### D.   THE EQUITIES COMPENSATION MODEL WAS RATIFIED THROUGH THE PARTIES' COURSE OF CONDUCT

Further fatal to Defendant's argument that the Equities Compensation Model is a modification to the terms of the contract is its course of conduct.  It is undisputed that for 2013 Defendant paid O'Grady a bonus consistent with the promises previously made to him and consistent with the Equities Compensation Model.

As a general rule, the course of conduct between parties can, and must, be analyzed to determine whether there was a meeting of the minds sufficient to form an enforceable contract. Derven v. PH Consulting, Inc., 427 F Supp 2d 360, 368 (SDNY 2006), citing, Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 370, 795 N.Y.S.2d 491, 828 N.E.2d 593 (2005).  In the context of employment contracts, payment of commissions, bonuses, and other alternate forms of compensation has been established by the conduct of the parties, rather than by express agreement. See, e.g., Mirchel v. RMJ Sec. Corp., 205 A.D.2d 388, 390, 613 N.Y.S.2d 876 (1st Dept.1994).

Even if the contract required written modification, the parties' course of conduct can ratify such modification.  Aiello v. Burns Intern. Sec. Services Corp., 110 A.D.3d 234, 245, 973 N.Y.S.2d 88 (N.Y.A.D. 1st Dep't.2013) (contracts requiring modifications to be made in writing by the parties may nonetheless be modified by actual performance and the parties' course of conduct).

Accordingly, at best, Plaintiff's claim for breach of contract must be sustained.

### E.   PLAINTIFF'S BONUS IS A WAGE AND THEREFORE NON-FORFEITABLE

Defendant claims that Plaintiff was not entitled to a bonus because, prior to the date of payment, his employment was terminated.  Defendant makes this argument based upon the premise that Plaintiff's bonus was discretionary.  According to the Complaint, however, the

bonus was based upon his personal performance calculated at 18% of his personal profits. Assuming Plaintiff's contention is correct, which this Court must assume for purposes of this motion, Plaintiff's bonus actually earned through his own performance, are considered wages and are not subject to forfeiture.  Ryan v. Kellogg Partners Institutional Services, 19 N.Y.3d 1 (2012).

The dispositive factor in determining whether compensation constitutes wages is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable.  Truelove v. Northeast Capital & Advisory Inc., 268 A.D.2d 648, 702 N.Y.S.2d 147 (3rd Dep't 2000), citing, Caruso v. Allnet Communications Servs.,242 A.D.2d 484, 484-485, 662 N.Y.S.2d 468 (1st Dep't 1997).

As recently as April 2, 2015, the First Department in reliance upon Ryan's ruling, held that, "[G]iven the conflicting language concerning the nature of the bonus payment, this issue presents a question of fact." Kolchins v. Evolution Markets, Inc., 2015 NY Slip Op 02863 (1st Dept Apr. 2, 2015).

It is well-settled that an employee's bonus constitutes a "wage" within the meaning of the Labor Law where – as here – it is "expressly link[ed] to [an employee's] labor or services personally rendered," and is "guaranteed and nondiscretionary as a term and condition of [the employee's] employment" Ryan v. Kellogg Partners Institutional Services, 19 N.Y.3d 1 (2012); Reilly v. NatWest Mkts. Group, 181 F.3d 253, 264-65 (2d Cir. 1999) (where "pay was guaranteed under the Percentage Bonus formula to be a percentage of the revenue he generated, and was not left to [defendant's] discretion," it "falls comfortably within the definition of a 'commission' that is expressly included within the Labor Law's definition of 'wages.'"); Mirchel v. RMJ Securities Corp., 205 A.D.2d 388, 389 (1st Dept. 1994) ("Employees in this state may

enforce an agreement to pay an annual bonus made at the onset of the employment relationship where such bonus constitutes an "integral part of plaintiff's compensation package."); Misek v. Downstairs Cabaret Theatre, Inc., 28 Misc. 3d 830, 906 NYS2d 439 (Cty. Ct. Rochester 2010) (bonus was not discretionary but rather was a withheld portion of employees earned salary, and therefore constituted wages under Article 6).

In Weiner v. Diebold Group, Inc., 173 A.D.2d 166, 167, 568 N.Y.S.2d 959, 960-61 (1st Dep't 1991), a case directly on point, the First Department held that an employee's earned incentive bonus could not be forfeited based on a contract provision purporting to require that the employee be employed at the time the bonus was paid because such a provision was unenforceable under the public policy of the State of New York.  Accord Mirchel v. RMJ Securities Corp., 205 A.D.2d 388, 389, 613 N.Y.S.2d 876, 878 (1st Dep't 1994) (notwithstanding purported requirement that employee be employed at the time bonuses are paid, "[e]mployees in this State may enforce an agreement to pay an annual bonus made at the onset of the employment relationship where such bonus constitutes an integral part of plaintiff's compensation") (internal quotation marks omitted); Guggenheimer v. Bernstein Litowitz Berger & Grossmann LLP, 11 Misc.3d 926, 931, 810 N.Y.S.2d 880, 885 (Sup. Ct. N.Y. Co. 2006) (holding that employee stated a claim for breach of contract based on failure to pay earned bonus notwithstanding employer's reliance on its policy that employee had to be employed on the date the bonus was to have been paid in order to be eligible to receive it). As the First Department in Weiner explained, although New York law generally recognizes a rule (cited by EvoMarkets) that an employee's entitlement to a bonus is governed by the terms of the employer's bonus plan, such rule must be tempered by the "longstanding policy against the forfeiture of earned wages

which applies to earned, uncollected commissions as well." 173 A.D.2d at 167, 568 N.Y.S.2d at 960-61.

On or around the same day BlueCrest entered into the Employment Agreement with O'Grady, O'Grady was provided with the written "bonus program," which was specifically referred to in the Employment Agreement.  The bonus program, entitled "Equities Compensation Model", confirms that O'Grady would be paid 18% of his personal performance P&L.  This commission given to O'Grady in writing is consistent with the commission compensation promised to him by Larkin as an inducement to joining BlueCrest and performing his duties under the Employment Agreement.

The Equities Compensation Model set forth specific details of how O'Grady's P&L commission would be calculated based upon his personal performance.  Because the bonus program referred to in the Employment Agreement was confirmed by the Equities Compensation Model, which confirms the means of measuring the amount of O'Grady's P&L commission based upon his labor and services, which is directly tied to his personal performance, the P&L Commission earned by O'Grady pursuant to the Equities Compensation Model is considered non-forfeitable "wages" under New York's Labor Law.  Further confirmation that O'Grady's "bonus" was considered a commission, even according to BlueCrest, is BlueCrest's deduction of O'Grady's base salary from the calculation of O'Grady's P&L commission.

Here, because the 18% payout is directly tied to the O'Grady's performance, as alleged, is a commission in the eyes of prevailing New York laws, notwithstanding Defendant's insistence on referring to it as a discretionary bonus, it  is not forfeitable and therefore not subject to Defendant's purported unilateral forfeiture policies concerning discretionary bonuses. Weiner v. Diebold Group, Inc., 173 A.D.2d 166, 167 (1st Dept. 1991) (noting New York's "long

standing policy against the forfeiture of earned wages"); Danovitch v. Gersten Savage LLP, 2013 N.Y. Misc. LEXIS 2977, at *11 (Sup. Ct. N.Y. 2013) (finding that "there is no basis to dismiss [plaintiff's] Labor Law claims" because "nothing in the complaint suggests that [plaintiff] is asking for discretionary incentive compensation."); Fiorenti v. Central Emergency Physicians, P.L.L.C., 187 Misc. 2d 805 (Sup Ct. Nassau County 2001) ("compensation scheme which is predicated upon an employee's personal productivity and the objective success of the venture—not the employer's discretion or any subjective standard—is a contractual right of the employee").

### F.      O'GRADY IS ENTITLED TO SEVERANCE PAY

If the allegations contained in the Complaint are accepted as true, Plaintiff was terminated without "cause" and thus is entitled to severance pay under the contract.

Defendant then argues that even if it agrees that Plaintiff was terminated without "cause," he failed to execute a severance agreement per the contract.

Black letter law provides that Defendant cannot use its own unilateral actions to argue that Jayson did not satisfy the condition precedent entitling him to his severance benefits when they themselves stymied those conditions.  Cauff, Lippman & Co., v. Apogee Finance Group, Inc., 807 F. Supp. 1007, 1992 U.S. Dist. LEXIS 12350 (S.D.N.Y. 1992) (a party may not rely on another party's failure to perform a condition precedent to discharge that party's obligations under a contract where that party frustrated or prevented the occurrence of the condition); citing, Sunshine Steak, Salad & Seafood, Inc. v. W. I. M. Realty, Inc., 135 A.D.2d 891, 522 N.Y.S.2d 292, 293 (3d Dep't 1987); Kooleraire Service & Installation Corp. v. Board of Educ., 28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971).

The doctrine of prevention "excuses a condition precedent when a party wrongfully

- 18 -

prevents that condition from occurring." In re Gulf Oil/Cities Service Tender Offer Litigation, 725 F. Supp. 712, 737 n.9, 989 U.S. Dist. LEXIS 10585 (SDNY 1989). The prevention doctrine rests on the precept that "no person can rely on the occurrence or non-occurrence of a condition when he wrongfully prevented or caused it . . ." Id., quoting, 3A Corbin on Contracts § 654 D at 931-32 (Kauffman Supp. 1989)); see, also, Arc Electrical Constr. Co., Inc. v. George A. Fuller Co., 24 N.Y.2d 99, 104, 299 N.Y.S.2d 129, 132, 247 N.E.2d 111 (1969) ("Respondent cannot rely on [a] condition precedent . . . where the non-performance of the condition was caused or consented to by itself").

It has been established for over a century that "a party may not insist upon performance of a condition precedent when its non-performance has been caused by the party himself." Ellenberg Morgan Corp. v. Hard Rock Cafe, 116 A.D.2d 266, 500 N.Y.S.2d 696, 699 (1st Dep't 1986) (citations omitted). See also, Simon v. Electrospace Corporation, 28 N.Y.2d 136, 142, 320 N.Y.S.2d 225, 269 N.E.2d 21 (1971). Under such circumstances, the prevention doctrine will operate  to excuse the condition precedent  which  was wrongfully prevented  from  occurring, thereby rendering the contract enforceable. Apogee, 807 F.Supp. at 1022 ("prevention doctrine is substantially related to the implied covenant of good faith and fair dealing implicit in every contract"); see also, In re Southold Development Corp., 173 B.R. 63, 74-75 (EDNY 1994) (also stating "[w]here a principal frustrates the fulfillment of the condition governing the broker's right to compensation, that principal is obliged to pay the commission").

Defendant's argument is that O'Grady's failure to return the severance agreement as a condition precedent to receiving severance pay obviates contractual obligations even though Defendant never provided such agreement in the first place. This logic falls squarely within the purposes of the doctrine of prevention. Defendant cannot point to Plaintiff as the reason the

condition was not satisfied when it failed to provide him with a release that encompassed the monies due him to be executed.

Defendant should recognize that Plaintiff was not provided with a release for him to sign to receive his severance pay.  Much like the rest of Defendant's Motion, it refuses to accept the allegations contained in the Complaint as true and instead, insert their own version of the facts and contend that O'Grady was terminated for cause.

It is ludicrous to argue that O'Grady is not entitled to severance pay when he was never presented with a release to execute.  Therefore, O'Grady has stated a valid claim for severance pay.

## III.   O'GRADY STATES A VALID LABOR LAW CLAIM

The New York Labor Law strictly prohibits employers from making any deductions from the wages of an employee, except under specific limited circumstances.  N.Y. Lab. Law § 193.  Labor Law § 190 defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis[, and] also includes benefits or wage supplements[.]" N.Y. Lab. Law § 190.  Last year, the Court of Appeals re-affirmed expressly that a bonus constitutes a wage for purposes of the Labor Law, and that an employer's failure to pay a bonus constitutes a violation of Section 193 of the Labor Law.  See, Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 15-16, 945 N.Y.S.2d 593, 601-02 (2012).

The question of whether a particular bonus constitutes a "wage" for purposes of the Labor Law overlaps substantially with the distinction (addressed above) between forfeitable discretionary bonuses and non-forfeitable earned bonuses.

As the Court of Appeals explained in the Ryan case, a bonus will be considered a "wage" for purposes of the Labor Law if it was expressly tied to the employee's own service and was a guaranteed, non-discretionary term of his compensation; while a bonus will not be considered a "wage" for purposes of the Labor Law if it is discretionary and tied to the performance of the company as a whole. See, id., 19 N.Y.3d at 15-16, 945 N.Y.S.2d at 601-02; cf. Truelove, 95 N.Y.2d 220, 715 N.Y.S.2d 366 (2000) (a bonus is not a "wage" under the Labor Law where it constitutes "[d]iscretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship" because the language of the statute "contemplates a more direct relationship between an employee's own performance and the compensation").

In this case, O'Grady alleges that he is entitled to unpaid earned compensation.   They are integral components of compensation tied to his own production – essentially commissions profits he generated.

At the very least, the issue of whether the bonuses should properly be characterized as integral parts of O'Grady's compensation tied to his own performance, therefore constituting wages under the Labor Law, cannot be resolved in Defendant's favor on this motion.

Rather, every inference should be drawn in Plaintiff's favor and he should be afforded the opportunity to develop the record proving that the bonuses constitute wages under the Labor Law.   See, Ryan v. Kellogg Partners Institutional Servs., 79 A.D.3d 447, 448, 914 N.Y.S.2d 81, 83 (1st Dep't 2010), aff'd, 19 N.Y.3d 1, 945.

## IV.    PLAINTIFF   STATES   VALID   CLAIMS   UNDER   QUASI-CONTRACT THEORIES

In the event this Court rules that the contract governing the terms, conditions, and privileges of O'Grady's employment with BlueCrest is invalid, though it must, in the alternative,

O'Grady has stated a valid claim for breach of implied contract.  See, Piven v. Harwood Feffer LLP, 14 CIV. 6601 LAK, 2015 WL 1267423, at *1-2 (SDNY Mar. 11, 2015) (Court did not find any fatal inconsistency between the breach of contract and promissory estoppel claims, especially given defendants' contention that no contract ever was formed.),  See, also, Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir.1996) (quasi-contractual claims were "properly pleaded" as alternatives to a contractual claim); Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04 Civ. 9578(TPG), 2006 WL 903184, at *3 (S.D.N.Y. Apr. 7, 2006) (a plaintiff "is entitled to plead the alternative theory of promissory estoppel in the event it is later determined there is no enforceable contract.").

## A.   PLAINTIFF STATES A VALID CLAIM FOR BREACH OF IMPLIED CONTRACT

An implied contractual relationship may be established by conduct of the parties, as well as by express agreement.  Land-Site Contr. Corp. v. Marine Midland Bank, 177 A.D.2d 413, 415, 576 N.Y.S.2d 255 (1st Dep't 1991).[1]  The course of dealing between the parties, as alleged by O'Grady, evinces an implied promise that O'Grady would receive 18% of his personal performance, a practice followed by BlueCrest for 2013 concerning O'Grady's commissions. Giuntoli v. Garvin Guybutler Corp., 726 F. Supp. 494 (S.D.N.Y. 1989).

The law recognizes that a contract implied in fact is just as binding as an express contract arising from declared intention, since the law makes no distinction between agreements made by words and those made by conduct.  A contract implied in fact is derived from the "presumed" intention of the parties as indicated by their conduct.  Jemzura v. Jemzura, 36 N.Y.2d 496, 503-504, 330 N.E.2d 414, 420, 396 N.Y.S.2d 400, 408 (1975).

---

[1] The federal rules do not require consistency in pleadings and permit Plaintiff to make claims alternatively on an express contract and on an implied contract.  John J. Kirlin, Inc. v. Conopco, Inc., No. 94 Civ. 2675, 1995 WL 15468, at *2 (S.D.N.Y. 1995) (internal quotation marks omitted), citing, 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1235, at 274 (2d ed. 1990 & Supp.1994).

An implied contract "may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct.  It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct."  <u>Sharp v. Patterson</u>, 2004 WL 2480426  at *8 (S.D.N.Y. 2004), <u>citing</u>, <u>Jemzura v. Jemzura</u>, 36 N.Y.2d 496, 503-04 (1975) (citations omitted); <u>People v. Wood</u>, 121 N.Y. 522, 530 (1890); <u>Carter v. Katz</u>, 465 N.Y.S.2d 991, 996 (N.Y.Sup.Ct. 1983); <u>see</u>, <u>W.B. David & Co. v. DWA Communications, Inc.</u>, No. 02 Civ. 8479, 2004 WL 369147, at *2 (S.D.N.Y. 2004).

## B.   PLAINTIFF STATES A VALID CLAIM FOR QUANTUM MERUIT

To state a cause of action for unjust enrichment, Plaintiff properly alleges that he conferred a benefit upon BlueCrest and that BlueCrest obtained such benefit without adequately compensating Plaintiff therefore.  <u>See</u>, <u>Nakamura v. Fuji</u>, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113 (1st Dep't 1998). "The essence of unjust enrichment is that one party has received money or a benefit at the expense of another."  <u>City of Syracuse v. R.A.C. Holding, Inc.</u>, 258 A.D.2d 905, 906, 685 N.Y.S.2d 381 (4th Dep't 1999).  It "is against equity and good conscience to permit [the other party] to retain what is sought to be recovered. . ."  <u>Citibank, N.A. v. Walker</u>, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 2d Dep't 2004), <u>quoting</u>, <u>Paramount Film Distrib. Corp. v. State of New York</u>, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 334 N.Y.S.2d 388 (1972).

Under the doctrine of quantum meruit, one (*i.e.*, BlueCrest) who accepts and benefits from the services of another (*i.e.*, O'Grady) who renders those services with the full expectation of being paid, must be paid for the reasonable value of those services.  <u>International Custom Assocs. v. Ford Motor Co.</u>, 893 F. Supp. 1257 (S.D.N.Y. 1995).

Quantum meruit recovery "rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another." <u>Trott v. Dean Witter & Co.</u>, 438 F. Supp. 842, 844,  aff'd, 578 F.2d 1370 (2d Cir. 1978)'.

In order to make out a claim in quantum meruit, a plaintiff must establish: (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services.  <u>Moors v. Hall</u>, 143 A.D.2d 336, 337-338, 532 N.Y.S.2d 412 (2d Dep't 1988).

As a general rule, the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services.  (<u>See</u>, <u>Matter of Adams</u>, 1 A.D.2d 259, 262, 149 N.Y.S.2d 849 (4th Dep't 1956), <u>aff'd</u>. 2 N.Y.2d 796, 140 N.E.2d 549, 159 N.Y.S.2d 698 (1957).   This inference, however, may not be drawn, "where because of the relationship between the parties, it is natural that such service should be rendered without expectation of pay ... In such situations, the claimant, in order to prevail, must present evidence to indicate that he or she expected to be paid for the services." <u>Moors v. Hall</u>, *supra* at 338. "The question of whether a party had a reasonable expectation of compensation for services rendered is a matter for the trier of fact to determine based on the evidence before it."  <u>Moors v. Hall</u>, *supra*, cited in <u>Matter of Adams</u>, 302 A.D.2d 520, 520, 755 N.Y.S.2d 289 (2d Dep't 2003).  Here, O'Grady performed work, labor and services on behalf of BlueCrest in return for compensation.  Thus, a cause of action for quantum meruit is sufficiently stated.

### C.    PLAINTIFF STATES A VALID CLAIM FOR PROMISSORY ESTOPPEL

As detailed herein, O'Grady's promissory estoppel claim can be sustained based upon (1) an oral promise that is sufficiently clear and unambiguous, (2) reasonable reliance on the

promise by a party, and (3) an injury caused by the reliance.  <u>See</u>, <u>Knight Sec. v. Fiduciary Trust Co.</u>, 5 A.D.3d 172, 774 N.Y.S.2d 488 (1st Dep't 2004).  Courts have found that if there comes a time when a party makes an unambiguous promise to another and that party reasonably and foreseeably relies upon that promise, it is ***unconscionable*** to allow that party nothing.  <u>See</u>, <u>Cyberchron Corp. v. Calldata Sys. Dev., Inc.</u>, 47 F.3d 39 (2d Cir. 1995).

New York courts generally do not require a showing of unconscionability where promissory estoppel is invoked to prevent injustice stemming from reliance on a gratuitous promise.  <u>Pearce v. Manhattan Ensemble Theater, Inc.</u>, 2007 U.S. Dist. LEXIS 16487 (S.D.N.Y. 2007).

The Second Restatement of Contracts defines promissory estoppel as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." Restatement (Second) of Contracts § 90(1) (1979).  The Restatement further provides that such a promise is enforceable "if injustice can be avoided only by enforcement of the promise." <u>Id</u>. The First Restatement's formulation was similar:   "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of Contracts § 90 (1932); <u>see</u> <u>also</u>, 28 Am. Jur. 2d Estoppel & Waiver § 48 (1966) ("An estoppel may arise from the making of a promise . . . if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would . . . result in . . . injustice.")

Consequently, O'Grady alleges a viable cause of action based upon promissory estoppel arising out of his reliance on clear and unambiguous promises that he would be compensated in exchange of his efforts on behalf of BlueCrest.

## **C O N C L U S I O N**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.


Dated:  New York, New York
        May 13, 2015


Respectfully submitted,

SACK & SACK, LLP

*/s/ Jonathan Sack*

By:    _____
       Jonathan Sack, Esq. (JS 1835)

       110 East 59th Street, 19th Floor
       New York, New York 10022-2050
       Tel:    (212) 702-9000
       Fax:    (212) 702-9702
       Attorneys for Plaintiff, Nicholas O'Grady