```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED:  6/15/2015
```

NICHOLAS L. O'GRADY,

                     Plaintiff,

    -against-

BLUECREST CAPITAL MANAGEMENT LLP,

                     Defendant.

15-Cv-1108 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    In this breach of contract action, plaintiff Nicholas L. O'Grady alleges that BlueCrest Capital Management LLP ("BlueCrest"), his former employer, failed to pay O'Grady the bonus and severance payments required by his employment agreement with BlueCrest. BlueCrest has now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Because the plain terms of O'Grady's employment contract foreclose his breach of contract and New York Labor Law claims, and his quasi-contract claims are impermissibly duplicative of his breach of contract claim, BlueCrest's motion is granted.

**I.  BACKGROUND**

    The following facts are assumed to be true for purposes of this motion.

    In June 2013, a headhunter retained by BlueCrest Capital Management LLP, a British hedge fund, contacted Nicholas O'Grady about joining BlueCrest's New York office and helping to build a "large multi-strategy industry-focused equities business." (Compl. ¶ 24.) Four months later, O'Grady met with Jonathan Larkin, Head of Equities at BlueCrest, to discuss O'Grady's potential employment with the company. (*Id.* ¶¶ 33-34.) Larkin informed O'Grady that BlueCrest was "prepared to move very quickly and make [him] a competitive offer" including an "18% payout on

[O'Grady's] personal performance." (*Id.* ¶ 34.)  By the end of the month, O'Grady received a written offer letter from BlueCrest. (*Id.* ¶ 35.)  On November 7, 2013, O'Grady signed the offer letter, which constituted his employment agreement (the "Agreement"). (Ex. A to Compl.)

### A. O'Grady's Employment Agreement

According to the Agreement, O'Grady was hired as a portfolio manager for BlueCrest with a starting annual base salary of $250,000. (Agreement §§ 1, 2, Ex. A to Compl.)  The Agreement also provided that:

> You will be eligible to participate in any bonus programs the Company may decide to establish from time to time to cover employees similarly situated to you, subject to the provisions of the applicable bonus program.  Any bonus program established and awards made pursuant thereto by the Company will be subject to the Company's *sole and absolute discretion*. . . . You will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . your employment has been terminated.

(*Id.* § 3 (emphasis added).)  The Agreement also included provisions relating to the termination of plaintiff's employment.  Of relevance here, section 5.3 provided that BlueCrest could "terminate [O'Grady's] employment without Cause upon one month prior written notice to [him]." Alternatively, the company was entitled to terminate his employment immediately and pay O'Grady one month of his base salary, provided that he execute a release to the company.  Specifically, the Agreement provided as follows:

> [i]n the event of [termination without cause], and in lieu of any notice required, [BlueCrest] may, in its absolute discretion, terminate your employment immediately . . . and make a lump sum payment equivalent to your Base Salary through the end of the notice period . . . , provided that you execute a valid and irrevocable release agreement in a form acceptable to the Company.

(*Id.* § 5.4.)

2

The Agreement also included an integration clause, which provided that the terms of the Agreement "set[] forth the sole and entire understanding between [O'Grady] and [BlueCrest] with respect to the subject of [O'Grady's] employment and supersede[] all prior or contemporaneous understandings, agreements or negotiations on that subject." (*Id.* § 21.)  The Agreement could be "amended or modified only by a written instrument signed by both Parties." (*Id.* § 22.)

Around the same time that O'Grady entered into the Agreement, he "was provided with the written 'bonus program,'" entitled "Equities Compensation Model—Illustrative Guidelines" ("Guidelines"). (Compl. ¶¶ 38-39; Ex. B to Compl.)  According to the Guidelines, O'Grady's bonus, entitled "net award" in the Guidelines, would be calculated by taking 18% of his net profits and losses and subtracting certain other costs, including the salaries and benefits of O'Grady and his team. (Ex. B to Compl.)  The Guidelines also stated that:

> No reliance should be placed on any information or representation contained within this document, which is by way of example only and no liability of any type will be incurred with regard to such information or representation . . . . The information set out in this document is illustrative only and is based on various assumptions which may not be borne out or which may be supplemented.  The rights of all employees . . . will remain at all times strictly subject to review and approval in accordance with the terms of the applicable employment agreement . . . which has neither been varied nor modified by anything set out herein.

(*Id.*)

### B.  O'Grady's Employment at BlueCrest

O'Grady began working at BlueCrest on December 2, 2013. (Compl. ¶ 43.)  He saw early success, generating approximately $570,000 in profits in the first month. (*Id.* ¶ 45.)  In January 2014, he received an email "detailing [his] team's salary and guarantees" for the year 2013. (*Id.* ¶¶ 46-47.)

3

O'Grady received his 2013 bonus at the 18% rate set forth in the Guidelines. (*Id.* ¶ 46.)

Although O'Grady alleges his success continued in early 2014 (*id.* ¶¶ 48-49), BlueCrest terminated O'Grady without cause on June 4, 2014 (*id.* ¶ 53).[1] O'Grady alleges that BlueCrest owes him one month of his base salary, or $20,833, as severance pursuant to sections 5.3 and 5.4 of the Agreement (Compl. ¶¶ 8, 60), and a $1,284,652 bonus payment, which represents 18% of the profits he generated in 2014, pursuant to section 3 of the Agreement and the Guidelines (*id.* ¶¶ 7, 59).

### C.  This Litigation

O'Grady brought this breach of contract action to recover the combined $1,305,485 in bonus and severance payments he alleges he is owed pursuant to the Agreement.  He also brings several quasi-contract causes of action—breach of implied contract, quantum meruit, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and an action for accounting—as well as one claim pursuant to section 193 of the New York Labor Law for defendant's failure to pay O'Grady his wages.

BlueCrest has now moved to dismiss O'Grady's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  BlueCrest contends that the unambiguous terms of the Agreement preclude any obligation to pay O'Grady a bonus, and O'Grady's failure to allege that he signed a release bars any severance

---

[1] It should be noted that in its motion to dismiss the complaint, BlueCrest asserts that on June 5, 2014, O'Grady was terminated *for* cause, effective that same day, for violating BlueCrest's Code of Ethics. (*See* Letter from BlueCrest to O'Grady dated June 6, 2014, attached as Ex. 4 to Declaration of Maya D. Cater, dated April 8, 2015; Def.'s Mem. of Law in Supp. of its Mot. to Dismiss the Compl. at 6-8.)  However, the Court is not considering this letter because it is required on a motion to dismiss the complaint pursuant to Rule 12(b)(6) to accept as true the allegations of the complaint. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).

payment. BlueCrest further asserts that O'Grady's quasi-contractual claims are impermissibly duplicative of his breach of contract claim because they are based on the same facts as the breach of contract claim. Finally, BlueCrest urges that O'Grady's New York Labor Law claim fails because discretionary bonus payments do not constitute wages pursuant to New York law.

## II. LEGAL STANDARD

"In evaluating a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor." *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 224 (S.D.N.Y. 2013) (citing *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011)). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" nor do "naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted). A complaint should be dismissed where the claims have not been "nudged . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss, this court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," as well as "documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Russo v. Bruce*, 777 F. Supp. 2d 505, 514 (S.D.N.Y. 2011).

5

## III. DISCUSSION

### A. The Plain Terms of O'Grady's Employment Contract Bar His Breach of Contract Claim

"In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreement[]." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). Where a contract is "unambiguous on its face, its proper construction is a question of law." *Metro. Life Ins.*, 906 F.2d at 889 (discussing New York law); *see also PaineWebber Inc. v.* Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) ("[W]here 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law,' and a claim turning on that interpretation may thus be determined . . . by [a motion to dismiss].").[2]

In interpreting a contract, words and terms are given their plain and ordinary meaning in the absence of contractual ambiguity. *See, e.g.*, *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010); *American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dept. 1990). A contract is unambiguous where the "language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture*, 595 F.3d at 467 (internal quotation marks omitted). Although

---

[2] Although the Agreement states that it is governed by Delaware law (Agreement § 17, Ex. A to Compl.), the parties cite to New York law in their memoranda of law and the Court accepts that as the relevant law. *See Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) ("[T]he parties have consented to application of New York law by briefing all issues under the law of New York."). Moreover, where, as here, the contract law of New York and Delaware is "not in conflict, the court can apply New York law even [though] there is a provision selecting [Delaware's] laws in the contract." *Two Locks, Inc. v. Kellogg Sales Co.*, No. 14-Cv-5917, 2014 WL 7335465, at *7 (E.D.N.Y. Dec. 19, 2014); *see also Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). In addition, at the oral argument on this motion, the parties agreed that New York law controls.

one party may assert a different meaning for a particular term, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989); *see also Sasson v. TLG Acquisition LLC*, 127 A.D.3d 480, __ N.Y.S.3d __ (1st Dept. 2015).

BlueCrest contends that the express terms of the Agreement bar O'Grady's breach of contract claim because (1) the Agreement states that any bonus payments are subject to BlueCrest's sole discretion and require employment on the date of payment and (2) O'Grady failed to allege that he signed a release, a condition precedent to BlueCrest making any severance payment. O'Grady counters that he is entitled to the bonus payment because the Guidelines were either incorporated into the Agreement or were ratified by the parties' course of conduct. He further argues in his memorandum of law that he is entitled to severance pay because BlueCrest wrongfully prevented O'Grady from signing a release, although that point is not set forth in the complaint.

### 1. *O'Grady is Not Entitled to A Bonus Payment*

O'Grady is not entitled to any bonus payment pursuant to the plain language of his employment contract. Section 3 of the Agreement unequivocally states that "any bonus program and awards made pursuant thereto by the Company will be subject to the Company's sole and absolute discretion." (Ex. A to Compl.) "It is well established that an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus." *Smith v. Railworks Corp.*, No. 10-Civ-3980, 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011) (citing, *inter alia*, *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752–53 (1989); *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 92 (2d Cir. 2010)).

In *Namad*, for example, the parties signed an employment contract which specified that "[t]he amounts of other compensation and

7

entitlements, if any, including regular bonuses, special bonuses and stock awards, shall be at the discretion of the management." 74 N.Y.2d at 752-53. The New York Court of Appeals unanimously affirmed the dismissal of the employee's breach of contract claim for failure to pay a particular bonus because "the bonus clause [had] unambiguously vest[ed] discretion regarding the amount of bonus compensation to be awarded in defendants' management." 74 N.Y.2d at 753.  Similarly, O'Grady's employment contract unambiguously declares that any bonus is "subject to the Company's sole and absolute discretion." (Agreement § 3, Ex. A to Compl.)

In addition, section 3 of the Agreement expressly states that O'Grady "will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . [his] employment has been terminated." (Ex. A to Compl.)  BlueCrest terminated O'Grady before any bonus based on his 2014 performance was awarded.  Here again, the plain terms of the Agreement foreclose his breach of contract claim.  *See Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225 (2000) (where "the bonus plan explicitly predicated the continuation of bonus payments upon the recipient's continued employment status . . . [and the] plaintiff resigned shortly after he received his first quarterly payment, he was not entitled to receive the remaining three payments"); *Johnson v. Stanfield Capital Partners, LLC*, 68 A.D.3d 628, 628-29, 891 N.Y.S.2d 383 (1st Dept. 2009); *see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012).

O'Grady puts forth several arguments to hurdle the barrier placed in his path by BlueCrest's motion.  Each is unavailing.  First, O'Grady contends that only the establishment of "any bonus program"—but not an award made pursuant to that bonus program—is "subject to the Company's sole and absolute discretion." (Agreement § 3, Ex. A to Compl.)  He goes on to claim that the establishment of the Guidelines

8

constituted the exercise of BlueCrest's discretion and thus the actual award of an 18% bonus was mandatory.

O'Grady's strained interpretation of the contractual language is untenable. The contract clearly provides that both the bonus program *and* any awards are discretionary in the following language: "Any bonus program established and awards made pursuant thereto by the Company will be subject to the Company's sole and absolute discretion." (Agreement § 3, Ex. A to Compl.)  O'Grady cannot create ambiguity by selectively quoting the operative provisions of his employment agreement. In addition, the Guidelines explicitly state that they are "illustrative" and that the "rights of all employees . . . will remain at all times strictly subject to review and approval in accordance with terms of the applicable employment agreement . . . , which has neither been varied or modified by anything set out herein." (Ex. B to Compl.)  Thus, the "bonus program" itself makes plain that it has neither amended nor superseded O'Grady's employment contract, which "may be amended or modified only by a written instrument signed by both Parties." (Agreement § 22, Ex. A to Compl.).

O'Grady also urges that the parties' course of conduct ratified the Guidelines and thus modified the terms of the Agreement.  To be valid, a contractual modification must satisfy each element of a contract, including offer, acceptance, and consideration. *See Beacon Terminal Corp. v. Chemprene, Inc.*, 75 A.D.2d 350, 354, 429 N.Y.S.2d 715, 718 (2d Dept. 1980). The course of conduct must evince a meeting of the minds in order to modify the Agreement.  *Id.* ("Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms.").

O'Grady's single bonus payment during the course of his employment is entirely consistent with the express language of the Agreement and in no way modifies the term that bonus awards are subject to BlueCrest's sole and absolute discretion.  *See Namad*, 74 N.Y.2d at 753; *Brennan v. J.P.*

*Morgan Sec., Inc.,* 7 Misc. 3d 1013(A), 801 N.Y.S.2d 230, 2004 WL 3314910, at *3 (Sup. Ct. 2004) ("[T]he fact that an employee receives bonuses throughout an employment relationship does not vitiate the employer's right to retain full discretion in determining the amount, if any, of an employee's bonus."). Any contrary interpretation would nullify the contractual term. O'Grady's course of conduct argument is therefore baseless.

Finally, O'Grady contends that his bonus is a wage and not subject to forfeiture because (1) the bonus calculation was based on O'Grady's personal performance and (2) the bonus was part of an inducement to join BlueCrest. As an initial matter, any oral promises made to O'Grady prior to entering the Agreement are insufficient to modify the express terms of his written employment agreement. S*ee Marine Midland Bank-S. v. Thurlow*, 53 N.Y.2d 381, 387 (1981) *(*"[W]here the parties have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of their writing.").

O'Grady is correct that New York courts may consider whether a bonus is tied to an employee's performance in determining whether incentive compensation constitutes an earned wage and is entitled to statutory protection. *See Truelove,* 95 N.Y.2d at 223-25. Nonetheless, "[a]n employee's entitlement to a bonus" remains subject to "the terms of the employer's bonus plan." *Hall v United Parcel Serv*., 76 N.Y.2d 27, 36 (1990). Where an unambiguous contract provides that bonuses are discretionary, a breach of contract claim fails. *See Namad*, 74 N.Y.2d at 753; *Hunter v. Deutsche Bank AG, N.Y. Branch*, 56 A.D.3d 274, 274, 866 N.Y.S.2d 670, 671 (1st Dept. 2008) ("Plaintiffs' claims for breach of contract lack merit in view of the unambiguous language of their contracts and the employee handbook plainly making bonus awards solely and completely a matter of defendant's discretion."); *Smalley v. Dreyfus Corp*., 40 A.D.3d 99, 106, 832 N.Y.S.2d 157, 162 (1st Dept. 2007), *rev'd on other grounds*, 10 N.Y.3d 55

(2008); *Kaplan v. Capital Co. of Am. LLC*, 298 A.D.2d 110, 111, 747 N.Y.S.2d 504, 505-06 (1st Dept. 2002). Accordingly, O'Grady's breach of contract claim as related to his bonus payment is barred by the plain terms of the Agreement.

### 2. *O'Grady is Not Entitled to A Severance Payment*

O'Grady is also not entitled to any severance payment pursuant to the express terms of his employment contract. Section 5.4 of the Agreement explicitly states that in the event O'Grady is terminated without cause, as he alleges (*see* Compl. ¶ 53), BlueCrest may "in its absolute discretion, terminate [his] employment immediately . . . and make a lump sum payment equivalent to [his] Base Salary through the end of the [one month] notice period . . . , provided that [he] execute[s] a valid and irrevocable release agreement in a form acceptable to the Company." (Ex. A to Compl.)

O'Grady has not alleged that he signed a release, the condition precedent to his receipt of one month of salary as severance. Since the satisfaction of a condition precedent "'must occur before a duty to perform a promise in the agreement arises,'" *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995), he is not entitled to any severance payment. *See, e.g., CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, No. 03-Civ-7936, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006) (dismissing a breach of contract claim where the plaintiff had "failed to allege, even generally, that the conditions precedent were performed or had occurred"); *see also* Fed. R. Civ. P. 9(c); *Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11-Civ-539, 2011 WL 2936013, at *9 (S.D.N.Y. July 14, 2011) (noting in dicta that "[p]laintiff is barred by the term of the policy from collecting severance, since . . . [he] does not allege that he ever signed [a Separation and Release] Agreement" which was "a precondition to payment"), *aff'd*, 494 F. App'x 153 (2d Cir. 2012).

11

In opposition to BlueCrest's motion, O'Grady—for the first time—alleges that BlueCrest "stymied" his ability to fulfill the condition precedent because it never provided him with a release to sign. (Pl.'s Opp'n at 18-20.)  But there is not a single allegation in the complaint that refers to a release, let alone any fact that would support an allegation that BlueCrest frustrated O'Grady's ability to sign one.  O'Grady may not use an opposition to a motion to dismiss to amend his pleadings.  *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).  His breach of contract claim as related to his severance payment is therefore dismissed.

At the oral argument on this motion, O'Grady did not request leave to amend his complaint, but had he so requested, that too would be denied as futile.  When pressed for factual support regarding his allegation that BlueCrest "stymied" his execution of a valid release, plaintiff offered a lone fact: that defendant never provided O'Grady with a release.[3]  As plaintiff failed to offer any specific factual allegations to substantiate his frustration argument, any amendment "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *cf. In re Bankers Trust Co.*, 450 F.3d 121, 128 & n.4 (2d Cir. 2006) ("Where a promisor has no duty to bring about the condition precedent to his promise," the "promisor's frustration of the occurrence of the condition," by passive conduct, does not occasion a waiver of the condition.).

---

[3] The fact that O'Grady did not receive a release is entirely consistent with defendant's position that O'Grady was terminated for cause, as no severance payment—and therefore no release—is required pursuant to section 5.2 of the Agreement.  Nonetheless, as set forth above, the Court accepts the truth of plaintiff's allegation that he was terminated without cause for purposes of this motion.  *See Wilson*, 671 F.3d at 128.

### B. O'Grady's Non-Contract Claims are Impermissibly Duplicative of his Contract Claim

In addition to his breach of contract claim, O'Grady seeks relief under various quasi-contractual theories of recovery, including breach of implied contract (Count Two), quantum meruit (Count Three), promissory estoppel (Count Four), breach of the implied covenant of good faith and fair dealing (Count Six), and action for an accounting (Count Seven). Because each of these claims is impermissibly duplicative of the breach of contract claim, they too fail to pass muster.

It is well settled that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *see also City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988) ("[Q]uasi-contractual . . . relief is unavailable where an express contract covers the subject matter."). As the New York Court of Appeals has explained, "[i]t is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." *Clark-Fitzpatrick*, 70 N.Y.2d at 389.

This action is decidedly based on, and arises out of, O'Grady's employment contract. As such, O'Grady may not seek recovery based on the quasi-contractual theories of implied contract, quantum meruit, and promissory estoppel. *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) (Claims for unjust enrichment or quantum meruit "are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter."); *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 87 A.D.3d 836, 842-43, 929 N.Y.S.2d 571, 577-78 (1st Dept. 2011) (Plaintiff's "claim for promissory estoppel is precluded because a breach of contract claim may not give rise to tort

liability unless a 'legal duty independent of the contract . . . has been violated.'"); *SAA-A, Inc. v. Morgan Stanley Dean Witter & Co.*, 281 A.D.2d 201, 203, 721 N.Y.S.2d 640, 642 (1st Dept. 2001) ("[W]here there is an express contract no recovery can be had on a theory of implied contract." (internal quotation marks omitted)).

Plaintiff's claims for breach of an implied covenant of good faith and fair dealing and his claim for an accounting meet the same fate. Neither can survive in the presence of O'Grady's breach of contract claim. *See, e.g.*, *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) ("[A]n equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter.").

### C. The Plain Terms of O'Grady's Employment Contract Foreclose his New York Labor Law Claim

BlueCrest also moves to dismiss O'Grady's claim asserted pursuant to section 193 of the New York Labor Law, which prohibits employers from taking "any deduction from the wages of an employee" except certain limited deductions not relevant here. The Labor Law defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. LAB. LAW § 190.

For many of the same reasons set forth above, O'Grady's section 193 claim is defective. A "plaintiff cannot assert a statutory claim for wages under [section 193 of] the Labor Law if he has no enforceable contractual right to those wages." *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632, 592 N.Y.S.2d 700, 703 (1st Dept. 1993). As the terms of the Agreement make plain, any bonus awards are subject to the "sole and absolute

discretion" of BlueCrest. (Agreement § 3, Ex. A to Compl.)  Since O'Grady has no enforceable contractual right to a bonus award, he cannot state a claim pursuant to section 193.  *See Truelove,* 95 N.Y.2d at 224 ("[P]laintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer" and this factor, *inter alia,* "take[s] plaintiff's bonus payments out of the statutory definition of wages.").

O'Grady makes much of the fact that his bonus payments, according to the Guidelines, were tied to his own performance.  Whether or not bonus compensation is based on an employee's work is but one factor to consider in determining whether compensation qualifies as a wage pursuant to section 193.  *See Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012) (considering whether the bonus was "expressly linked" to the employee's performance *and* whether its payment "was guaranteed and non-discretionary as a term and condition of his employment" in determining whether incentive compensation constituted a wage).

Moreover, in New York, "the term wages does not include bonus, profit-sharing, and other forms of incentive compensation unless the incentive compensation is *already 'earned' by the employee*." *Koss v. Wackenhut Corp.*, 704 F. Supp. 2d 362, 369 (S.D.N.Y. 2010) (emphasis added).  "A bonus is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer." *Id.*  As O'Grady's bonus payment was predicated in the Agreement on both his employer's discretion *and* active employment on the date of payment, any bonus for 2014 had not yet been earned at the time of his termination.  *See Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 417-18 (S.D.N.Y. 2011) (collecting cases); *Truelove,* 95 N.Y.2d at 225.

Finally, O'Grady's section 193 claim fails because section 193 applies to amounts *deducted* from wages, not *unpaid* wages and severance, which is

15

alleged here. *See, e.g., Monagle v. Scholastic, Inc.*, No. 06-Civ-14342, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007) ("Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages."); *Kletter v. Fleming*, 32 A.D.3d 566, 567, 820 N.Y.S.2d 348, 350 (3d Dept. 2006) (affirming the dismissal of a counterclaim for nonpayment of compensation where the defendant "fail[ed] to allege any specific deduction in violation of section 193"). Therefore O'Grady has failed to state a claim pursuant to section 193 of the Labor Law.

### IV. CONCLUSION

The plain terms of O'Grady's employment contract bar his breach of contract and New York Labor Law claims and his quasi-contract claims are impermissibly duplicative of his breach of contract claim. Accordingly, O'Grady fails to state a claim upon which relief can be granted, and the Court grants BlueCrest's motion to dismiss the complaint.

Dated: New York, New York
June 15, 2015

SO ORDERED:

*[signature]*
Sidney H. Stein, U.S.D.J.